WESTERN DIST.
*October,* 1840.

MILLER
*vs.*
HOLSTEIN.

## MILLER *vs.* HOLSTEIN.[*]

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF RAPIDES, THE JUDGE THEREOF PRESIDING.

Other systems of law may be referred to for light, when the great and leading principles of equity are in question, and our own laws are silent; but the merely arbitrary rules of a foreign system, should not be invoked.

The *Louisiana Code, article* 2294, which declares that "every act of man which causes damage to another, obliges him, by whose fault it happens, to repair it," *does not limit the right* to recover in an action of slander, to words *"actionable" per se;* or require proof of special damage when not actionable, according to the common law rule.

So, where the plaintiff was charged with having *"sworn falsely,"* and proved that he always supported a good character, upon which there was a verdict of five hundred dollars: *Held,* that such a charge is in itself presumption of damages, and the law has left the question of damages to the jury, subject to the revision of this court.

This is an action of slander. The plaintiff alleges that the defendant, with a view to defame and injure his character and good name, and destroy his reputation, did, on the 30th June, 1837, and at other times, maliciously, falsely, and wickedly charge him, (meaning plaintiff,) with being *"a rascal, and*

[*] This case was argued and decided at the October Term, 1839, but judge Martin being dissatisfied with the decision, and the defendant's counsel desiring it, a rehearing was granted.

*having sworn falsely,"* alleging at the same time, "that he had the documents to show for it." That these words were uttered and proclaimed in public, on said 30th June, 1837, and at other times, in substance, to one John Frazier, and other persons of this parish, thereby attempting, as far as lay in his power, to destroy the character of your petitioner, and bring him into disgrace and shame. He claims from the said King Holstein, five thousand dollars in damages for these unprovoked, malicious, slanderous and false charges, and asks for a jury, and prays for a verdict and judgment in his favor.

The defendant denies that he has given the plaintiff, who is an old acquaintance and friend, any cause of action, and that none is set forth, or can be charged, as he hath never upon any occasion done the plaintiff an injury. He fearlessly submits his cause to a jury of his countrymen.

Upon these pleadings and issues the cause was submitted, on the evidence and arguments of counsel, and a charge from the court to the jury.

*Frazier,* sworn, says the defendant said Miller (plaintiff) *"was a rascal, had sworn falsely,* and that he had the documents to show for it." This was in June, 1837, and took place in witness' presence, and that of James Calvit and others.

*J. Calvit,* sworn, says that in his presence the defendant declared that Miller *"had sworn a damned lie,* and he could prove it, and had the documents to show it."

*Vincent,* sworn, says some time in October, 1837, the defendant wanted witness to tell the plaintiff, Miller, that he was a *damned rascal.* Witness told him to do it himself, and he replied, he had done so, and further, that he could whip the plaintiff with one hand tied to his back. In a subsequent conversation, defendant told witness, he did not know Miller to be a rascal, but he believed him to be one.

*George,* sworn, says he knew Miller for the last six or seven years, and that he is an industrious, honest young man, as far as he knows, and that this is his general character; says defendant is in moderate circumstances, but owns several slaves.

Other witnesses testified to Miller's good character.

The defendant's counsel excepted to the testimony of Cal-
vit, because it was different from the charges and words laid
in the petition.    Also, to the testimony of Vincent, because it
relates to a different transaction.

The defendant's counsel moved the court to charge the
jury, 1. "That the words charged in the petition, are not
actionable."

2. " That the words charged in the petition, are not of
themselves actionable, and the jury should not give a verdict
in favor of the plaintiff unless actual damages are shown."

3. " That the words charged in the petition, do not amount
to a charge of perjury."

4. " That unless the words charged amounted to a charge
of perjury, there should be a verdict for the defendant, unless
actual damages are shown."

5. "That it is not any words of an abusive or offensive
character, which will maintain an action of slander, without
showing special damages to have resulted from them."

6. " That unless the words charged, (if true,) would sub-
ject the plaintiff to a criminal prosecution and punishment,
the jury ought to find for the defendant, unless special dama-
ges are proven."

All of these charges were severally refused by the judge
a quo, as they were asked for, and a bill of exceptions taken
to the refusal by the defendant's counsel.

The judge charged the jury as follows:    "It would seem
if the common law were in force here, on a subject of this
kind, that this action could not be maintained.    But in a case
like the present, we must look to our own jurisprudence in
order to decide it.    It is a matter of regret that our law has
laid down no distinction in actions of slander, but according
to a decision of the Supreme Court, the right to bring an
action of this kind, is referred to a general law,   'that every
act of man which causes damage to another, gives the person
injured a right of reparation in damages.'   Another rule,
which has been laid down by the court, is 'that the jury is to
consider the language complained of in its common meaning,
and according to the effect it was calculated to produce on
those to whom it was addressed.'   You will then accordingly

weigh the language used by the defendant towards the plaintiff, and if you consider it, in a popular sense, conveyed the idea that he committed a legal crime, you will find for the plaintiff such indemnity as in your sound discretion ought to be given, according to the injury done to the plaintiff in his feelings or calling. Of the measure of damages, the jury are especially the proper judges within the limits asked for. The court is not prepared to say that mere words of heat, such as that another is *a rascal*, ought to occasion damages against the person uttering it, unless, at least, the person in relation to whom they are used could show he was injured, by being deprived of employment. But any charge, in common acceptation of a criminal nature against another, if punished by law, will justify the action of slander under our laws, and if you think this was fairly the meaning of those words, you will find for the plaintiff."

"If the language used, charged the plaintiff with moral turpitude, falsely and maliciously, in such a way, as, in your opinion, to injure his character and standing in society, you may find for the plaintiff, without showing special damages." To this charge of the court, the defendant's counsel excepted.

The jury returned a verdict for the plaintiff, of five hundred dollars in damages, and from judgment rendered thereon, the defendant appealed.

This case was argued at the October Term, 1839, by *Messrs. Dunbar* and *Hyams*, for the plaintiff.

*Messrs. Winn* and *Brent*, for the defendant.

*Strawbridge J.*, delivered the opinion of the court.

The plaintiff charges the defendant with slandering him, by saying "he was a rascal, and had sworn falsely, and that he had the documents to show for it;" the words being uttered "wantonly and maliciously," and claims five thousand dollars damages.

The defendant denies any cause of action being set forth, and generally all the facts.

The charge in the petition has been proved; the jury gave

a verdict of five hundred dollars in damages, on which judgment was entered, and this appeal taken.

A bill of exceptions taken to the refusal of the court to charge the jury as required, and also, to the charge as given, brings before us the whole ground of the defendant's complaint, viz: That the judge having refused to instruct the jury "that the words laid down in the petition were not of themselves actionable, and that they could not give the plaintiff a verdict, unless actual damage had been shown : That the words spoken, did not amount to a charge of perjury, and that unless the words amounted to a charge of perjury, they could not find for the plaintiff, unless special damage had been shown : That words of an abusive or offensive character, do not suffice to maintain an action, unless special damage be shown: That unless the words charged, if true, would subject the plaintiff to a criminal prosecution or subject him to punishment, the jury ought to find for the defendant, unless special damages were proved," which he refused to do, but instrusted them, "that the words were to be understood in the common and popular meaning, and if they charged the plaintiff falsely and maliciously with moral turpitude, so as to injure his character and standing in society, they might find for the plaintiff, without showing any special damage."

The defendant has had the benefit of an able defence, founded on the common law doctrines of libel, and although all intention to appeal to that source, as introducing it generally into our jurisprudence has been utterly diavowed, yet it cannot escape remark, that there is just as much reason to adopt any other dogma of that system, as the one invoked. The next case coming before us, may depend on some other common law rule, and why shall we reject that, if we assent to this; thus, the whole English law of libel is gradually to be drawn in as authority.

There can be no scruple in referring to any other system for light, where the great and leading principles of equity are in question, and where our own law is silent; but where the merely arbitrary rules of a foreign system are invoked, we should pause, and if our own code has furnished us a rule, it

50    VOL. XVI.

The *Louisiana Code, article 2294*, which declares that "every act of man which causes damage to another, obliges him by whose fault it happens, to repair it," *does not limit the right to* recover in an action of slander to words "*actionable*" *per se,* or require proof of special damage, when not actionable, according to the common law rule.

is imperative even though it be shown to be defective, and grave and weighty considerations of policy are appealed to in favor of another. The remedy is in the hands of the legislature.

Two articles of the Louisiana Code are referred to as sustaining the plaintiff's pretensions, viz: *article 2294,* which declares that "every act of man which causes damage to another, obliges him by whose fault it happened, to repair it." If injurious words are uttered, they fall within the terms of this provision. It does not limit the right to words which, in the language of the bill of exceptions, are "actionable," or which "amount to a charge of perjury," or "which if true, would subject the party to a criminal prosecution;" nor does it limit the damage to "special" damages; such a construction is subversive of the terms "every act," which causes "damage," &c. The whole language of the charge required would be senseless to a man unacquainted with the distinctions of the English law.

Another article of the Code, 1928, declares that "although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed, without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality, or taste, or some convenience, or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach: a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule."

"In the assessment of damages under this rule, as well as in cases of offences and *quasi* offences, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages, under the above rules, as will fully indemnify the creditors, whenever the contract has been broken, &c."

Were the present case without any proof of damage, the decision in *Stewart* vs. *Carlin*, 2 *Louisiana Reports*, 75, would furnish a precedent for leaving the verdict of the jury undisturbed. But there is proof that the plaintiff had, since his residence in this neighborhood, " always supported a good character, and been an industrious honest man.". Though this might not suffice for a show of special damage in the sense of the common law rule, yet it is difficult to come to the conclusion that there was no damage shown. If there be any intellectual enjoyment higher than that of possessing a good name, or gratification greater than the respect of our neighbors, they must be looked for in matters out of the reach of the libeller : such a charge as is stated in the petition, is in itself presumption of damage; in this view, the law has left the damages to the jury, subject to the revision of this court. The majority of the court does not deem them disproportioned in this case to the offence, and are, therefore, for affirming the judgment of the District Court, with costs. *Judge Martin*, dissenting.

It is, therefore, ordered, that the judgment of the District Court be affirmed, with costs.

*Margin note:* WESTERN DIST. October, 1840.

MILLER vs. HOLSTEIN.

So, where the plaintiff was charged with having "*sworn falsely*," and proved that he always supported a good character, upon which there was a verdict of five hundred dollars: *Held*, that such a charge is in itself presumption of damages, and the law has left the question of damages to the jury, subject to the revision of this court.