# TELEGRAPH CO. *v.* MELLON.

### (*Nashville.* January 21, 1896.)

1. **TELEGRAPH COMPANIES.** *Action by beneficiary for nondelivery of telegram.*

   One not the addressee of a telegram but named as beneficiary therein, may, notwithstanding the absence of any contractual relation, maintain suit against a telegraph company for damages for failure to deliver same, as for breach of its statutory duty, under §§ 1542, 1543 (M. & V.) Code, to promptly transmit and deliver messages, or, in default thereof, to be liable to the party aggrieved for the damages suffered. (*Post, pp. 67–72.*)

   Code construed : §§ 1542, 1543 (M. & V.); §§ 1323, 1324 (T. & S.).

   Cases cited and approved : Marr *v.* W. U. Tel. Co., 85 Tenn., 527; Wadsworth *v.* W. U. Tel. Co., 86 Tenn., 695; 75 Tex., 531; 77 Va., 173 ; 114 Ind., 511; 52 Ind., 1.

2. **SAME.** *Notice of claim for damages for nondelivery of telegram.*

   A stipulation in the contract of a telegraph company that any claim for damages for nondelivery must be presented, in writing, within sixty days, is sufficiently complied with, where the telegram was never delivered, by the commencement, without precedent demand or notice, of an action by the beneficiary therein named, within sixty days after learning that such a telegram had been filed for transmission. (*Post, pp. 72–75.*)

   Cases cited and approved : Manier & Co. *v.* W. U. Tel. Co., 94 Tenn., 442; Glenn & Son *v.* So. Express Co., 86 Tenn., 594; 109 N. C., 527; 33 Fed. Rep., 362.

3. **SAME.** *Excessive verdict.*

   A verdict of $500 for failure to deliver a telegram summoning a father to the sick bed of his son, who subsequently died without having seen his father. is excessive, where the latter received another message in time to have reached his son prior to the latter's death, and failed to do so only because he did not start promptly. (*Post, pp. 75–78.*)

4. SAME. *Evidence inadmissible.*

Evidence that, after the death of his son, a father was told that the latter had expressed a desire to see him, and wondered why he had not responded to a message summoning him to his side, and believed that he was being neglected, is inadmissible in an action for damages for failure to deliver the telegram, where the father received notice of his son's illness in time to have enabled him to have reached his side before his death if he had started promptly. (*Post, p. 78.*)

---

### FROM MONTGOMERY.

---

Appeal in error from Circuit Court of Montgomery County. A. H. MUNFORD, J.

LEMUEL R. CAMPBELL and BURNEY & GHOLSON for Telegraph Co.

LEECH & SAVAGE for Mellon.

McALISTER, J. The plaintiff below recovered a judgment in the Circuit Court of Montgomery County against the defendant company for the sum of $500 damages for mental pain and anguish alleged to have been sustained by him in consequence of the negligence of the company in failing to deliver a telegram. The company appealed, and has assigned errors. The facts out of which the present controversy has arisen may be briefly stated. The plaintiff below, John Mellon, resided in Montgomery County, about four miles from Clarksville. He had

a son, Maxie Mellon, who lived at Duncansville, in the State of Texas. On July 16, 1893, this son was very ill of typhoid fever, and caused the following telegram to be sent to Frank Hamlet, residing at Clarksville, Tenn., viz.:

"Tell John Mellon Maxie is very sick. Come if possible.          (Signed)          JIM MORRISON."

It will be remarked, in passing, that John Mellon, the plaintiff in this action, was neither the sender nor the addressee, but yet the beneficiary of the message, as is disclosed upon its face. This telegram, it appears, was never delivered, and this non-delivery is made the basis of the present action. Plaintiff claims that he did not know of the condition of his son until some days afterwards, when he was notified that his son was dying, and, when he reached Duncansville his son had died, and was buried. Defendant demurred to this declaration upon two grounds, viz.: First, it shows upon its face that there was no contract by defendant to deliver said message to plaintiff, or to his agent, or to anyone who was under any legal obligation to deliver same to him. Second, it shows on its face that said message was addressed to Frank Hamlet, and it nowhere shows any obligation on part of Hamlet to deliver same to plaintiff. The demurrer was overruled, and this is assigned as error.

It has been held in this State that, while telegraph companies are neither common carriers nor bailees nor insurers, that considerations of public

policy demand that they shall be held responsible for a very high degree of diligence.        *Marr* v. *Western Union Tel. Co.*, 85 Tenn., 529.

Our statute imposes upon telegraph companies the duty of transmitting messages for the public without discrimination and without unreasonable delay. The statute provides, viz.: "All other messages, including those received from other telegraph companies, shall be transmitted in the order of their delivery, correctly, and without unreasonable delay, and shall be kept strictly confidential." Code (M. & V.), § 1542. "Any officer or agent of a telegraph company who willfully violates either of the provisions of the preceding section is guilty of a misdemeanor, and he and the telegraph company or proprietor are also liable in damages to the party aggrieved." Code (M. & V.), § 1543.

It was held by this Court, in *Wadsworth* v. *Telegraph Co.*, 86 Tenn., 695, that the party to whom a telegram, intended for his personal benefit, is addressed has a right of action for damages against the telegraph company for negligent conduct in its transmission and delivery. It was further held that the company, having breached its legal duty, was liable, at least, for nominal damages, and, in addition, was further liable for such sum as would "reasonably compensate plaintiff for the grief, disappointment, or other injury to her feelings, occasioned by such default of the company." See, also, *Railroad* v. *Griffin*, 92 Tenn., 694.

It will be perceived that the present action is prosecuted neither by the sender nor sendee of the telegram, but by the person who appears upon its face to be the real beneficiary. It is insisted by counsel for the company that this is an action for a breach of contract, and, no privity of contract being shown to exist between plaintiff and the company, the action cannot be maintained. We cannot concur with counsel that the action is exclusively upon the contract. While it may be conceded that the second count of the declaration is distinctively *ex contractu*, the first count proceeds upon the facts of the case, and seeks to recover damages for the breach of a legal duty. "The true view," says Mr. Thompson, "which seems to sustain the right of action in the receiver of the message, or in the person addressed where it is not delivered, is one which elevates the question above the plane of mere privity of contract, and places it where it belongs— upon the public duty which the telegraph company owes to any person beneficially interested in the message, whether the sender, or his principal where he is agent, or the receiver, or his principal where he is agent. In Texas it is reasoned, with manifest good sense, that the question as to who may maintain such an action does not depend upon the payment of the fee or upon the question whether the sender had been previously constituted an agent for that purpose by the party to whom the dispatch is sent, but upon the question who, in fact, was to be

served and who is damaged.'' Thompson on the
Law of Electricity, Sec. 427; *Western Union Tele-
graph Co.* v. *Adams*, 75 Texas, 531.

In the case of the *Western Union Telegraph Com-
pany* v. *Reynolds Bros.*, 77 Va., 173, it was said:
''It cannot, however, be claimed that the obligation
of a telegraph company to send a message grows
entirely out of the contract with the sender in Vir-
ginia. In this State the obligation rests upon them
for the correct transmission and faithful delivery of
messages under the statute, as we have seen, as it
does upon innkeepers, common carriers, and the like,
upon whom legal duties rest, resulting from their
occupation and profession, and who owe a duty to
the public irrespective of their engagements in par-
ticular instances. In Virginia, a telegraph company
cannot refuse to make the contract with the sender
without violating a penal statute, and if they are
under obligations, which they cannot avoid, to send
every dispatch which is offered, how can their ob-
ligation be said to rest upon the contract alone?
Their obligations, under the laws of this State, are
such that they are compelled to make the contract;
and, when it is made, by receiving the message and
the price for its transmission according to their own
regulations, they are under obligations to send it,
both under their contract to send it and under the
law, which makes it their duty to send it.'' *Hay-
wood* v. *McCracken*, 2 How.

In Indiana there is a statute providing that tele-

graph companies shall be liable for special damages occasioned by failure or negligence of their operators or servants in receiving, copying, transmitting, or delivering dispatches. It was held by the Supreme Court of Indiana that, under this statute, a telegraph company was liable for special damages sustained, although the party injured was neither the sender nor addressee of the message. *W. U. Tel. Co.* v. *McKibben*, 114 Ind., 511; *W. U. Tel. Co.* v. *Fenton*, 52 Ind., 1.

So we think that, under our statute allowing a right of action to the party aggrieved, it is not necessary that any contractual relation should exist, but the company is liable for a breach of its statutory duty independent of any contract. The breach of the statute in failing to deliver the message entitled the party aggrieved to at least nominal damages, to which may be added compensatory or exemplary damages, in the discretion of the jury. The party aggreived is the party who, upon the face of the message, appears to be the beneficiary—in this case the plaintiff, John Mellon. The demurrer was, therefore, properly overruled.

The tenth assignment of error is that the Court erred in refusing the following request, viz.: "The contract made by the telegraph company in this case stipulated that any claim for damages should be presented to the company, in writing, within sixty days from the sending of the message. This is a valid agreement, and binding upon all parties, but it is in-

sisted by plaintiff that, inasmuch as he did not re-
ceive the message, as it was not delivered, he had
no notice of the stipulation, and, therefore, is not
bound by it, he having brought the suit within sixty
days from the time he received notice that such a
telegram had been sent.   Upon this question I charge
you, that if the telegram was sent on July 16, and
the plaintiff received notice of that fact on the twenty-
sixth of that month, then it was his duty to file
his claim, in writing, with the company, according to
the terms of the stipulation, within the sixty days
provided for, if he had ample time to do so after
such notice,'' etc.

The record discloses that the telegram in question,
sent from Duncansville, Texas, on July 16, 1893,
has never been delivered either to the plaintiff or to
Frank Hamlet, the addressee.   Plaintiff, however,
learning that his son was sick, went to Duncansville
about July 26, and there learned, for the first time,
that such a message had been filed for transmission.
Now, the insistence of the defendant's counsel, as
embodied in this instruction, is that, notwithstand-
ing the message containing the sixty day stipulation
had never been delivered to Frank Hamlet, nor seen
by plaintiff, that plaintiff, having been advised in
Texas that such a message had been sent, was bound
to file his claim for damages before the expiration
of sixty days from the sending of the message.
We cannot concur in this contention.   It was held
by this Court in *Manier & Co.* v. *Western Union*

*Telegraph Co.*, 94 Tenn., 442, that a contract exempting a telegraph company from liability unless the claim for damages resulting from negligence in transmission of message shall be made within sixty days after the message is sent, is a valid and reasonable stipulation. "It is a reasonable requirement, enabling the company to inquire into the nature and circumstances of a mistake in or of the delay or nondelivery of a message while the matter is still within the memory of witnesses." *Sherrill* v. *Telegraph Co.*, 109 N. C., 527. "It is not a statute of limitations, restricting the time within which action may be brought." *Ib.*

But, says the Court in *Johnson* v. *Western Union Telegraph Co.*, "there are, however, circumstances in which the stipulation for sixty days would be unreasonable, as, for instance, where a prepaid message was never delivered." The Court goes on to say that a stipulation of thirty days after the message is sent would be unreasonable in such case, for the failure of the company to deliver it would deprive the plaintiff perhaps of all notice that a telegram had been sent to him, and the company could prevent all redress by holding the telegram until after the term within which it is stipulated the demand on them must be made. *Johnson* v. *Telegraph Co.*, 33 Fed. Rep., 362.

If, therefore, the action was begun within sixty days after the knowledge by the plaintiff of the failure to deliver the message, it would be such

compliance with the stipulation as could be required in a case where the message was not delivered at all. *Sherrill* v. *Telegraph Co.*, 109 N. C., 527.

The plaintiff made no demand before suit brought, but the general rule that the commencement of an action is equivalent to a demand applies to cases of this kind. Thompson on the Law of Electricity, Sec. 256.

These authorities are in accord with our own case of *Glenn & Son* v. *Southern Express Co.*, 86 Tenn., 594. In that case, it was held that a stipulation in a receipt that the express company should not be liable for money lost by its default, unless claim therefor is made, in writing, at its office within thirty days after its delivery to the company, is reasonable and valid; but, where the failure to make the claim, as required by such stipulation, occurs without fault or negligence of the parties entitled to the money, then, such failure will be excused, and will not prevent a recovery for the loss. We are, therefore, of the opinion the instruction asked was properly refused.

The third assignment of error is that the damages assessed by the jury ($500) were excessive. We are constrained to believe this assignment well taken, for the following reasons. The record discloses that, while the message of July 16 was never delivered, yet, on July 22, another message was filed for transmission at Duncansville, informing plaintiff of the illness of his son, viz.:

"*To Jack Graham, care J. S. Neblett, Clarksville,
   Tenn.:*

"Maxie Mellon is expected to die. Deliver to
John Mellon.          (Signed)      JIM MORRISON."

This message, it appears, was delivered to John Mel-
lon on the evening of the twenty-second, about sun-
down. The plaintiff lived about four miles from
Clarksville, and the proof shows that he could have
started that night for Texas. He made no effort,
however, to leave, but postponed all preparations until
the following day, Sunday, July 23. As a reason
for not leaving on Sunday, plaintiff claims the banks
were all closed, and he could not get any money, so
that he did not finally depart until Monday night,
July 24, reaching Duncansville after his son had died
and was buried. It is perfectly plain, from the rec-
ord, that, if plaintiff had started on Saturday night,
July 22, the evening the message was received, or
had left Sunday night, he could have reached Duncans-
ville before his son's death. But it is obvious, from
telegrams sent by plaintiff on Sunday, that he did
not make up his mind to go to Duncansville until
Monday. Sunday morning, July 23, plaintiff sent the
following message from Clarksville to Jim Morrison,
at Duncansville, Texas:

"Do all possible for Maxie. Wire me his condi-
tion immediately.      (Signed)      JOHN MELLON."

On same day, July 23, at 4:30 P.M., the follow-
ing reply message was received from Duncansville:

"*John Mellon, Clarksville, Tenn.:*

"Maxie has typhoid fever.    There is no hope for him."

On the following day, Monday, July 24, plaintiff forwarded to Duncansville this message:

"*To T. B. Kellow:*

"Wire me how Maxie is at once.    If he is living, I will come.        (Signed)        JOHN MELLON."

On same day, July 24, at 10:50 A.M., plaintiff received reply, as follows:

"*To John Mellon, Clarksville, Tenn.:*

"Maxie was alive four o'clock this morning. Doctor does not think he can live.

(Signed)                    "T. B. KELLOW."

The plaintiff, after a delay of two days, left Clarksville that night at 12 o'clock.    It appears that if regular connection had been made, he would have reached Duncansville Tuesday, July 25, at 6 o'clock P.M.    Plaintiff, however, was delayed at Memphis, and did not reach his destination until Wednesday, July 25.    It thus appears, that while the company was guilty of a breach of its public duty in not delivering the message of July 16, the failure of the plaintiff to reach his son prior to the latter's death was not entirely attributable to this default, since the plaintiff received intelligence of his son's illness on July 22, in time to have enabled him to reach him.

In this view, the damages assessed by the jury are excessive.

The fifth assignment of error is, that the Court erred in admitting, over defendant's objection, the testimony of Jim Morrison, viz.: "When John Mellon reached there, Maxie was dead and buried, and I told him Maxie wanted to see him, and wondered why he had not responded to the message, and believed that he was being neglected by his father." Defendant excepted to this testimony, upon the ground that it was hearsay and irrelevant. We are of opinion this testimony was not competent for any purpose, and should have been excluded by the trial Judge. Such declarations were not admissible as illustrating the mental pain of the deceased, for that was not the subject-matter of the inquiry, nor were they admissible for the purpose of showing the mental anguish of the father, since the disappointment of the son at not seeing his father cannot be said to have resulted as a natural and proximate consequence of the failure of the company to deliver the message of July 16. As we have already seen, the father received notice of his son's illness on the twenty-second, and delayed for two days to take his departure, thus disappointing the expectations of his son, without fault or negligence of the company, so far as this telegram was concerned.

For the reasons indicated, the judgment is reversed and the cause remanded for a new trial.