(51 South. 908.)

No. 17,781.

JOZSA v. MORONEY.

(March 14, 1910.)

*(Syllabus by the Court.)*

1. LIBEL AND SLANDER (§ 25*)—PUBLICATION.

It is not necessary in matters of libel that the defamation should be made known to the public generally, or even to a considerable number of persons. It is sufficient if it be communicated to only one person other than the person defamed.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 107, 108; Dec. Dig. § 25.*]

2. LIBEL AND SLANDER (§ 44*)—PRIVILEGED COMMUNICATIONS—LETTER TO EMPLOYER ATTACKING EMPLOYÉ.

An intemperate and violent letter written to an employer, making groundless and unprovoked charges against an employé calculated to injure and degrade him and cause his discharge, cannot be recognized as a privileged communication by means of which the writer can with impunity destroy the confidence of the employer in his subordinate and break up the relations between them.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 136; Dec. Dig. § 44.*]

3. LIBEL AND SLANDER (§ 5*) — MALICE — PROOF.

Malice need not be expressly proved; it may be implied.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 278; Dec. Dig. § 5.*]

4. LIBEL AND SLANDER (§ 116*)—DAMAGES—NECESSITY FOR PROOF OF PECUNIARY DAMAGES—MENTAL SUFFERING.

No special damages need be proved. The actual pecuniary damages in an action for libel can rarely be proved and is never the sole rule of assessment. Mental suffering alone can be made the basis for damages.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 343; Dec. Dig. § 116.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Stephen Jozsa against Timothy Moroney, defended by his succession on his death prior to trial. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Benjamin Rice Forman, for appellant. James J. McLoughlin, for appellee.

Statement of the Case.

NICHOLLS, J. The plaintiff alleged that the defendant had willfully, falsely, without probable cause, and maliciously libeled petitioner, and had willfully, untruthfully, without probable cause, and maliciously published and circulated libels concerning petitioner, and has consequently damaged your petitioner in the aforesaid sum, as more particularly hereinafter set forth.

That the aforesaid libels published and circulated by defendant consist in part in the fact that defendant on March 17, 1908, addressed a letter written over his own signature to Charles Schuler, Commissioner of Agriculture, and the employer of petitioner, wherein defendant charged petitioner with being a grafter and engaged in unlawful co-operation with others in extorting money in his official capacity, all of which will more fully appear from a copy of said letter addressed by defendant to the Honorable Commissioner of Agriculture, which is for better reference made part hereof, and filed herewith, marked "P-1"; the original of said letter being in the possession of the Honorable Commissioner of Agriculture of the State of Louisiana, and to be produced in the trial hereof.

That said defendant further libeled petitioner by publishing, issuing, and sending to John Dymond, Jr., attorney for petitioner, a letter written over the signature of defendant under date of March 30, 1908, wherein defendant charged petitioner with being a blackmailer, thereby again unlawfully and unjustly, maliciously, and wantonly publishing and circulating a libel against petitioner, all of which will more fully appear from the original of said letter now for better reference made part hereof and filed herewith, and marked "Exhibit P-2."

That as a result of the said libels published and circulated by defendant, concerning petitioner, that petitioner has been damaged

and his reputation injured in the community in which he is engaged in business, and that he (petitioner) has been discharged by the Commissioner of Agriculture, said discharge being attributable to the libel by defendant, and that petitioner has thereby lost his position and employment, from which he was receiving $75 per month.

That petitioner is not, and has never been, a grafter or a blackmailer, and that the charges so made by defendant are untrue and false to the knowledge of defendant, and were unlawfully and maliciously made for the purpose of injuring petitioner and causing him to suffer damage. That the true facts in regard to the immigrant Hedig Platky are as follows:

That the said woman was brought to petitioner's office by defendant for the purpose of securing the assistance of petitioner in locating a trunk belonging to the said woman, that the said woman subsequently called on petitioner, advising him that she had been employed by one C. A. Orleans, who had discharged her, whose employment she had left owing her $2.50, and that, as she was not able to speak the English language fluently, she requested petitioner to write a letter to C. A. Orleans, requesting him to pay the sum of $2.50, balance of wages due the said woman by her to be due her, and that in furtherance of this request petitioner wrote a letter of a polite and proper character, asking C. A. Orleans to pay the sum of $2.50, claimed by the said woman, the same to be turned over to her, which letter petitioner believes caused the defendant to write his subsequent letters to the Honorable Commissioner of Agriculture and to John Dymond, Jr., attorney at law, heretofore set forth.

That as a result of the said illegal, unlawful, malicious, and wanton act of defendant evidenced by the first libel aforesaid, petitioner has been damaged in the sum of $5,-000, represented by his loss of employment as Assistant Secretary to the Commissioner of Agriculture. That petitioner has also suffered loss and damage to his reputation in the community in which he lives by virtue of both of said libels, which damage petitioner alleges to be the sum of $2,500, represented by petitioner's inability to secure employment while said charges stand against him.

That petitioner has also suffered loss and damages in his personal feelings and mortification following the making of said charges by defendant, which damages plaintiff alleges to be the sum of $2,500, and that defendant has therefore damaged petitioner in the full sum of $10,000, which plaintiff is entitled to recover of defendant. Petitioner further represents that he is entitled to a trial by a jury herein, and that he herewith deposits with the clerk of this honorable court the sum of $13 as a jury fee.

In view of the premises, plaintiff prayed that Timothy Moroney, defendant herein, be duly cited to appear and answer herein, and, after due proceedings had, that plaintiff, Stephen Jozsa, do have and recover of defendant, Timothy Moroney, judgment to the full sum of $10,000, with legal interest from date of judgment herein and costs of these proceedings, that plaintiff have trial by jury, and for all general and equitable relief in the premises.

Defendant, after excepting that plaintiff's petition disclosed no cause of action, answered, denying generally and specifically the allegations of the petition. The issues were tried' before a jury, which returned a verdict in favor of the defendant, and plaintiff has appealed.

### Opinion.

The plaintiff was assistant secretary to Charles Schuler, Commissioner of Immigration of Louisiana. On March 7, 1908, the

following letter was written by him to C. A. Orleans at New Orleans:

"Dear Sir: An immigrant woman by the name of Hedig Platky has called at my office, stating that you owe her $2.50 for one week's wages, and has asked us to collect this money from you.

"If you will kindly bring this money to our office we will gladly turn it over to her.

"Very respectfully,
          "Chas. Schuler, Commissioner.
          "[Signed] per Stephen Jozsa,
                    "Assistant Secretary."

After this letter, the following communication was sent to the commissioner by the defendant:

"Mr. Charles Schuler, Commissioner of Immigration, No. 730 Carondelet Street—Dear Sir: I have a letter from your Stephen Jozsa concerning Hedig Platky, a woman whom I employed about a month ago, and who left me rather suddenly one day last week through the influence of this Jozsa.

"This fellow's letter which is addressed to C. A. Orleans, would indicate that your office is a vehicle for pretended grievances of these lawless people and that the employés of your office are largely engaged in grafting in co-operation with these pretended emigrants.

"You may notify this man in your employ, that I am the person to deal with, and that I have already dealt with the woman referred to, and in the meantime, if you wish to investigate the matter further, you will find me here at my place of business.

"Yours very truly,
          "[Signed]   Timothy Moroney."

To this communication the commissioner replied as follows:

"March 20, 1908.
"Mr. Timothy Moroney, New Orleans, La.— Dear Sir: I am in receipt of yours of the 17th inst., making complaint against Stephen Jozsa, and have carefully noted contents. I would be much obliged to you if you will send me a copy of the letter addressed to C. A. Orleans, with reference to the woman Hedig Platky.

"You say in your letter that the employés of my office in New Orleans are largely engaged in grafting in co-operation with the pretended emigrants. That is a very serious charge, and I hope you will be able to give all the information in order to prove your assertions. It will give me great pleasure to investigate the matter and if your assertions are proven to discharge every one of them that may be proven guilty.

"Hoping that you will not hesitate to give me all the information in the premises and inform you that I will send a copy of your letter to Mr. Jozsa, and request him to explain himself and prove himself innocent.

"I am, respectfully,          Commissioner."

The commissioner must have sent a copy of Moroney's letter to him to the plaintiff, for shortly thereafter John Dymond, an attorney at law, who was in consequence of this letter employed by the plaintiff, wrote to the defendant informing him of that fact and demanding reparation of some kind to. the plaintiff. Dymond's letter is not in the record, but Moroney answered it March 30th, saying:

"I presume from yours of the 26th, that this Stephen Jozsa has added the blackmailing element to his other qualifications of a desirable emigrant.

"It will not be necessary to take up either your time or mine with an interview.

"In due time, after you have begun proceedings, I will meet you and your client at the courthouse.

"Yours very truly,
          "[Signed]   Timothy Moroney."

This suit followed resulting in a verdict rejecting plaintiff's demand. Before the trial, defendant died, and his succession was made defendant in his place.

The syllabus of defendant's brief sets out the positions which he contends for:

(1) To condemn a person as a libeler, it must appear that the letter written by him was defamatory, and communicated in order to bring him into contempt, ridicule, or hatred.

(2) The letter written by the person charged with libel addressed directly to the attorney of the complainant is not a libel in the sense of the law of libel. There was no publication.

(3) A private letter from a person who answers the attorney of another, relating to a special matter in which each is concerned, is not ground for action for libel.

(4) A confidential letter written by a citizen to a public official, complaining of a wrongful act of the official's subordinate, is

a privileged communication, and the subordinate cannot sue for libel thereon.

(5) The jury having failed to find that plaintiff suffered any damage from the acts of defendant, the court will not disturb the verdict.

We do not know on what grounds the jury returned the verdict it did. We think it was because, in its opinion, the facts of the case did not establish a sufficient "publication" of defendant's letter, and, next, because no pecuniary damage to plaintiff had been shown to have resulted from its having been sent to the commissioner.

Plaintiff was discharged from his employment not long after the receipt by the commissioner of the letter referred to; but we do not find as a fact that this was due to defendant's letter or to any loss of confidence in the plaintiff. The loss of plaintiff's position is shown to have been caused by want of funds under the control of the Bureau of Immigration to keep up its force of employés, and, when plaintiff left, the relations between himself and his employer and those with whom he had been connected were of the most cordial and friendly character. The element of damage in the case which the plaintiff must rely on is the mental pain and humiliation suffered by him from having had himself referred to his employer as a "grafter," and having been made the subject of conversation and discussion by the employés in and around the Immigration Bureau.

The evidence shows that as a fact the receipt of such a letter by the commissoner and knowledge of its contents had in some manner become known to such employés, but through whose instrumentality they had become so known is not shown.

The law has not attempted to fix the extent of the publicity given to defamatory or libelous charges against a person, which is necessary to serve as a foundation for an action against the person making the charges.

Townsend says that publication means communicated "by the libeler to some other." Section 23, p. 77; section 104, p. 142; section 108, p. 144.

Newell, pp. 227, 228, and 229: It is not necessary that the defamation should be made known to the public generally, or even to a considerable number of persons; it is sufficient if it be communicated to only one person other than the person defamed. See cases cited in volume 18, p. 1014, American & English Cyc. of Law, English and federal cases, and cases from other states.

The letter of the defendant to the commissioner was not a privileged communication. Unquestionably, where a person honestly believes himself to have been injured or wronged by the act of an employé of a public official, he is authorized to write to said official, setting out and complaining of the wrong, and asking for investigation and correction, and the writer may be protected from an action of libel even if the charge be not made good; but whether or not he will be so protected will depend upon the facts and circumstances of each case. An intemperate and violent letter written to the employer, making groundless or unprovoked charges against an employé, calculated to injure and degrade him and cause his discharge, cannot be recognized for a moment as a privileged communication by means of which he can with impunity destroy the confidence of the employer in his subordinate and break up the relations between them.

The letter of the plaintiff to Orleans was written in respectful terms and called for no violent answer from Orleans himself, still less from Moroney, who is not in any manner referred to in it. There was nothing in that letter calculated to arouse in either Orleans or Moroney any violent anger, or to justify any charge against the plaintiff for having written it. The reply of Moroney to that letter was totally unprovoked and reprehensi-

ble. Did he by writing the same render himself responsible to the plaintiff for damages, and, if so, to what extent? Counsel of plaintiff disclaims any intention of setting up Moroney's reply to Mr. Dymond's letter as a cause of action. He says that he simply desires to make use of that as giving evidence of the defendant's malice. He contends that "malice need not be expressly proved; it may be implied." And he cites Cauchoix v. Dupuy, 3 La. 206, Kernan v. Chamberlin, 5 Rob. 116, and Miller v. Holstein, 16 La. 389, in support of that proposition. He is legally correct in taking that position.

He next maintains that it is not necessary, in an action for damages for libel, that the plaintiff should have established that he has suffered pecuniary loss; that damages for mental suffering alone can be recovered, although the party may have suffered no other loss. He refers the court on that subject to: Lyles v. Western Union Telegraph Co., 77 S. C. 174, 57 S. E. 725, 12 L. R. A. (N. S.) 534; Lindsay v. Oregon R. Co., 13 Idaho, 477, 90 Pac. 984, 12 L. R. A. (N. S.) 184; Wadsworth v. Telegraph Co., 86 Tenn. 695, 8 S. W. 574, 6 Am. St. Rep. 864; Railroad v. Griffin, 92 Tenn. 694, 22 S. W. 737; Telegraph Co. v. Mellon, 96 Tenn. 66, 33 S. W. 725; Telegraph Co. v. Robinson, 97 Tenn. 638, 37 S. W. 545, 34 L. R. A. 431; Telegraph Co. v. Frith, 105 Tenn. 167, 58 S. W. 118; Gray v. Telegraph Co., 108 Tenn. 39, 64 S. W. 1063, 56 L. R. A. 301, 91 Am. St. Rep. 706; Parker v. Lumber Co., 115 La. 463, 39 South. 445; Graham v. Western Union Tel. Co., 109 La. 1069, 34 South. 91.

Plaintiff also insists that no special damage need be proved (Guice v. Harvey, 14 La. 198), and that:

"The actual pecuniary damage in an action of libel can rarely be proved and is never the sole rule of assessment." Daly v. Van Benthuysen, 3 La. Ann. 69; Miller v. Roy, 10 La. Ann. 231; King v. Ballard, 10 La. Ann. 557.

These are correct announcements of the law on that subject.

We are of the opinion that the verdict of the jury and the judgment thereon rendered are erroneous. The verdict should be set aside, and the judgment annulled, avoided, and reversed, and it is hereby so ordered and decreed. It is further ordered, adjudged, and decreed that plaintiff do have and recover judgment against the succession of Timothy Moroney, the defendant, in the sum of $300, with legal interest from the date of this judgment until paid, with costs of both courts.