## JOHNSON v. CROW.
### No. 4913.

Court of Appeal of Louisiana.
Second Circuit.
Feb. 5, 1935.

Harry V. Booth, of Shreveport, for appellant.

Herold, Cousin & Herold, of Shreveport, for appellee.

MILLS, Judge.

Defendant operates a business at Texarkana, Tex., under the name of the Star Linen Supply Company. It furnishes, for a rental, napkins, tablecloths, aprons, towels, etc., to barber shops, restaurants, butcher shops, and other concerns using such articles in the territory of East Texas. The linens are delivered clean by trucks and taken up, when soiled, laundered and reissued. The drivers of these trucks are given a certain area in which they build up a personal trade and following which amounts to a business or calling peculiar to itself.

Plaintiff is a married man with a family, residing in Shreveport, La. For two years prior to entering the service of defendant on December 27, 1932, he had been a driver for the Shreveport Linen Supply Company, managed by Ben Levy, a branch of the Shreveport Laundries, Incorporated, of which August Goldstein is president. After working ten days for defendant, plaintiff, being offered better inducements, returned to his former employment.

On April 17, 1933, defendant, F. M. Crow, wrote a letter to Mr. Goldstein. It coming to the attention of plaintiff, he, on May 11, 1933, filed this suit, claiming $2,500 damages for the alleged libelous and defamatory statement, contained in the letter, that petitioner was a thief. The letter follows:

"April 17th, 1933.
"Mr. A. Goldstine
"Dear Sur.

"as I figure you mabe like myself you maynot know all that is going on among your men and their conduct.

"one thing is your men are picking up and delivering my linen I have taken this up with your man Levy some time ago and he ashured me it would be stoped I find that they are still doing the same thing.

"As you know this is pety Larceny and they are using your trucks to do this.

"This gives you knowledge that this is going on and unless this stealing is stoped at once and all my linen returned to me I expect to expose the hole thing and this has been going on for at least one year or longer I think Johnson is the worst theaf you have. when he was puting over his frameup he exprest himself to me that he would take all your Linen he could get. I told him in presant of my other drivers which was 2 at one time and then when he and I was togather to stay off your Linen and if he did acidently get one peace of your Linen dont cary it out put it in storage and we would return it to your Co.

"I dont expect to hound you about this as I have copy of this I will not take this up this way with you I dont car for promeses you can do what you expect to do at once some of my aprons will be hawled in to your plant today from Marshall, if this is stoped at once and all my Linen returned to me I

will drop it otherwise I am not through with it. I cant remember whether I ever mentioned this to you befor so if I have just descard this if not I sugest if it suits you do what you are going to do at once and notify me of your entention.

"Yours Very Truly.

"[Signed]. F. M. Crow."

The defense is truth, justification and, in the alternative, absence of malice, and absolute or qualified privilege.

In the lower court there was judgment for plaintiff in the sum of $50, from which defendant has appealed; and plaintiff has answered, praying that the amount be increased to $1,500.

During the pendency of the appeal defendant has died. Upon proper motion and showing, E. A. Hamner, executor of his estate, was substituted as party defendant.

We are not favored with a written opinion by the trial judge, but are informed in the briefs that he held orally that the evidence did not show Johnson to have committed theft, though he had shown an utter disregard of the property rights of defendant, and that defendant could not be absolved from blame on the ground of privilege, though in good faith, because he went too far and was too intemperate in his accusation.

The Star and the Shreveport Linen Supply Companies are close competitors in the East Texas field, one G. D. Collins having succeeded Johnson as driver for the former. The former's goods are plainly and unmistakably marked with a five-point star and a circle containing the letters "S. L. S." A certain amount of intermingling of pieces is inevitable where two or more companies are operating in the same locality. This is true to a much greater extent immediately after a change of patronage, as the new supply company making its first deliveries of clean linen finds on hand the soiled articles of its predecessor. Ben Levy explains it thus:

"It has always been our experience where we are operating against another linen supply company that invariably at times each will get the others linen. That occurs in this way: If I am serving a customer who happens to be dissatisfied for some means and quits us, it is impossible to gather every piece of my linen from my competitor. In that way you are always getting a scattering or few pieces of linen belonging to your competitor. That happens right here in Shreveport where we operate and at different intervals we have gone so far as to even swap each others

linens at some particular time that they have accumulated, give them back."

He says further that only a week before, defendant's Shreveport branch had returned to him an accumulation of his linen picked up by their drivers.

Shortly after Johnson left defendant's service, its losses became so heavy that Collins, defendant's driver, stopped the Shreveport truck on the road and asked Johnson if he had any of Crow's linen. Johnson said he did not know but that Collins could look. Collins opened the bundles and did look, finding a number of pieces plainly marked with the star, some soiled and some clean. On another occasion Johnson had a large bundle on his running board, one-third of which were defendant's goods. Collins says that Johnson, on this occasion, denied having any of Crow's property, but a marked end sticking out led him to investigate the bundle, with the above result. On still another occasion he took a distinctive star waitress' uniform from the Magnolia Café in Longview, but returned it on request. These incidents were reported to Crow, who consulted counsel and was advised that Johnson's acts constituted petty larceny. It was after these happenings that the letter was written. Johnson explains that on the first occasion he had gathered up defendant's goods without noticing, and that on the second he had taken them deliberately with the intention of turning them over to Collins, but he had passed directly by defendant's Longview plant before the goods were found. We do not think that the articles were taken by Johnson with the intention of appropriating them to his own use, and believe that under the system of interchange or swapping, the linen would ultimately have found its way back to its owner.

Without going further into detail, the evidence satisfies us, as it did the trial judge, that, though it would not sustain a charge of theft, it does show a vexatious and unfair spirit of competition that entirely justifies a letter of complaint from Mr. Crow to Mr. Goldstein. Though they owed each other no duty, the heads of the two concerns had a mutual interest in keeping each other posted as to the conduct of their drivers. A letter on this subject, couched in proper language, would be qualifiedly privileged. Oakes v. Walther, 179 La. 365, 154 So. 26.

We also agree with the trial judge that Crow went too far when he singled Johnson out and accused him of being "the worst theaf you have." In fact, the letter as a whole is not couched in calm language that

one friendly business concern addresses another. It is more or less intemperate and distinctly threatening.

Plaintiff proves no actual damage. Mr. Goldstein says that he investigated the matter and found no reason to discharge plaintiff. The letter was shown to the manager of the linen supply company and was discussed among the employees, but it is not shown that it affected his standing in any way or led to any discrimination against him.

Outside of the testimony of plaintiff himself that it made him feel mighty bad for his fellow employees to know that he had been charged with being a thief, there is no proof of humiliation. It is not pleasant to be called a thief. We think the intemperate use of that word and the singling out of Johnson as the worst thief in the bunch indicates some malice and ill will on the part of Crow toward plaintiff. The existence of this malice is destructive of the pleas of justification and qualified privilege. Charging a man with theft is actionable per se. Under these circumstances, we think the damages allowed should be increased. It is not necessary to prove special or pecuniary damage. These can seldom be proved in cases of this character. Where the words are libelous, damage is presumed. Mental suffering alone forms a proper basis for recovery. Miller v. Holstein, 16 La. 395; Godchaux Sugars, Inc., v. Boudreaux & Bros., 153 La. 685, 96 So. 532; Jozsa v. Moroney, 125 La. 813, 51 So. 908, 27 L. R. A. (N. S.) 1041, 19 Ann. Cas. 1193.

We think an allowance of $200 is more in line with the jurisprudence. Lasseigne v. Tolmas, 164 La. 529, 114 So. 122; Jozsa v. Moroney, supra.

For the reasons above assigned, the judgment appealed from is amended by increasing the damages allowed to $200, and, as amended, is affirmed.