189 So. 442

**SANTANA v. ITEM CO., Limited.**

No. 35187.

May 1, 1939.

Rehearing Denied May 29, 1939.

F. Louis Gonzales, of Baton Rouge, for appellant.

Deutsch and Kerrigan, of New Orleans, for appellee.

ODOM, Justice.

Plaintiff is a citizen of Puerto Rico and in January, 1938, was a student in the Louisiana State University at Baton Rouge. Defendant is a corporation which publishes The New Orleans Item, a newspaper which has wide circulation both in this and other states. On January 19, 1938, there was published in defendant's newspaper the following news item:

"Hits Pacifism of U. S. Youth
"No Fighting Spirit, Puerto Rican Writes
"(Item-Tribune Bureau)

"Baton Rouge, La., Jan. 19.—The spirit of pacifism in youths of the United States was assailed today by Manuel Santanna of Villabla, Puerto Rico, student at L. S. U., in a letter published in The Reveille, student weekly.

" 'The boys in the United States do not seem so brave and fearless as they are so often pictured,' young Santanna wrote. 'I expected most of the boys at least to have the fighting spirit, but nothing of the sort.'

"Mr. Santanna said that when war pictures were shown in the movies, students shouted 'war propaganda' and that more than one student had said he would never volunteer for military service. He deplored such an attitude."

The letter published in The Reveille to which defendant's newspaper made reference reads in full as follows:

"Dear Editor:

"Maybe it is unwise to talk about what I have on my mind, but I cannot sit back and not tell anyone how I feel about this matter.

"The boys in the United States do not seem so brave and fearless as they are so often pictured. In Cuba I have often heard stories of brave American heroes, consequently when I came to this country

I expected most of the boys, at least, to have this fighting spirit, but no! Nothing of the.sort, and I am very much disappointed in them.

"At the moving pictures they shout 'War Propaganda' whenever the screen shows war in China or the sinking of the American boat. I was surprised at such a re-action. It seems to me they could keep quiet if they cannot say anything else.

"On all sides they tell me something like this, 'I'm willing to defend my country if they cross the water to attack us,' or 'I'm not going to pack a rifle over there, let 'em come here, we'll show 'em.' I cannot understand such an attitude. Surely they cannot want war and destruction to rage in their own country, surely they would not have their fathers and mothers periled by the various war machines. Yet it seems to me that this is just what they would rather have than to volunteer for service should they be called upon to do so.

"One boy told me that President Wilson should not have entered the World War, that he had made a grave mistake. On all sides I hear such things. So many tell me that they will have to be dragged there if they want them.

"I am not trying to spread 'war propaganda,' as these boys shout in the theatres, it is just that I want it to be said that American boys are not what they're 'cracked up to be.'

"D. Santanna.

"P. S. I will not be surprised if you refuse to publish this. It is a little hard to swallow.—R. S."

Alleging that the statement published by defendant attributing to him the authorship of the letter published in The Reveille was a false, malicious, defamatory, and libelous charge, maliciously contrived and intended to injure him, plaintiff brought this suit against defendant to recover damages amounting to $23,500.

Plaintiff alleged that he did not write the letter published in The Reveille, or any other letter making such assertions; that defendant had referred to the letter as having been written by him, and that the statement in defendant's newspaper that he had written the letter was "intended and calculated to convey to the readers thereof an imputation on petitioner injurious to his reputation as a man and peace loving citizen, holding him up and exposing him to public hatred, contempt and ridicule".

He further alleged that said publication "was intended to inflame and excite the public mind, to create public clamore, prejudice and bias", and further:

"That the said publication imputes to petitioner acts which tend to disgrace him and deprive him of the confidence and good will of society, and to lessen its esteem for him."

He further alleged that, by falsely and maliciously publishing and circulating this article in the Parish of East Baton Rouge where the Louisiana State University is located, defendant has "damaged your petitioner's good name and reputation, in that said article depicts your petitioner as a 'war propagandist'". He alleged that,

as a result of this false and malicious publication, "your petitioner will be looked upon by millions of American youths and specially by those of East Baton Rouge Parish, as their enemy, this article tending to foster hate and contempt towards your petitioner".

He further alleged that, due to the malicious publication and circulation of this defamatory article, defendant has brought upon plaintiff "great adverse notoriety", and that it has caused those with whom he must associate at the Louisiana State University to "shun and avoid your petitioner and look upon him as their enemy and the enemy of mankind"; that because of this publication "he lives in constant fear and apprehension of serious bodily injury to be caused by thousands of young men whose feelings have been injured"; that the young men attending the University "believe themselves aggrieved by petitioner, all because of the utterly false, malicious and defamatory article published by defendants, in which article petitioner is depicted as a war propagandist in this country, belittling the courage of American youths".

He further alleged that, due to this state of affairs, he will have to leave the campus of the Louisiana State University to attend some other school, and that the expense incurred by him by such move will be considerable.

In answer defendant admitted the publication of the news item referred to by plaintiff, and especially alleged that it attributed the authorship of the letter published in The Reveille to plaintiff in good faith; that its reporter at Baton Rouge, seeing the publication in The Reveille, checked the student directory of the Louisiana State University in order to obtain more information concerning the person who purported to be the author of that article and found that the only person named Santana listed in said directory was Manuel Santana, of Villalba, Puerto Rico; that thereupon its reporter forwarded to its newspaper a simple account of said publication; that said article was published in the usual course of its business as a newspaper publisher "without ill will or malice towards plaintiff, who is unknown to your respondent; that in publishing said article your respondent did so with justifiable motives and with probable cause to believe in the truth of the facts set forth therein; that the said article is not libelous and that the same was privileged". Defendant especially denied that plaintiff had suffered any damage on account of the publication complained of.

After the trial of the case on its merits, plaintiff's suit was dismissed by the trial court. From this adverse judgment plaintiff prosecutes this appeal.

It was proved at the trial that the plaintiff, Manuel Santana, was not the author of the letter published in The Reveille. That letter, as published, was signed by "D. Santanna", and the postscript added was initialed "R. S.". Defendant's Baton Rouge reporter testified that, after reading the letter as published in The Reveille, she checked the University student directory and found listed therein only one per-

son named Santana, and that his given name was Manuel. She said she observed that the letter was signed "D. Santanna" and that the postscript added was initialed "R. S.", from which she concluded that the editor or publisher of The Reveille had erred in so far as the writer's initials were concerned. She said that, when she wrote and sent to defendant's paper the news story which was published, she believed and stated in good faith that the letter was written by Manuel Santana, the plaintiff.

The Reveille, in which the letter was published, is a student publication and is distributed and widely read on the campus. The letter was published on the editorial page under the caption "Letters to the Editor". It seems that letters published under this caption are usually written by students of the University. The names of all students are listed in the student directory. Under the circumstances thus stated, the conclusion reached by defendant's reporter that the article was written by plaintiff was not unreasonable or without foundation.

■ But her error could have been easily avoided. Seeing as she did that the letter as published was signed "D. Santanna" and that the postscript was initialed "R. S.", and finding that neither D. Santanna nor R. Santanna was registered as a student at the University, but that Manuel Santana was registered there, she should have looked up Manuel Santana and ascertained from him whether he wrote the letter. She could easily have done this, and it was her duty to do so.

■ However, the testimony does not warrant the conclusion that either she or defendant was guilty of an intentional misrepresentation of the facts, and certainly does not indicate, much less prove, that the publication complained of was malicious, and "maliciously contrived and intended to injure him [plaintiff] before the public".

The testimony shows that plaintiff is a young man 21 years of age, a citizen of Puerto Rico, a student at the Louisiana State University where literally thousands of others are enrolled as such; that he was at the time personally known to but few on the campus; that defendant's reporter had never met or heard of him prior to this incident; that those in charge of defendant's newspaper, published in New Orleans, a distance of some 80 miles from Baton Rouge, had never heard of him. It is therefore inconceivable that any wrong or injury was intended by the publication of the news item complained of, which did no more than impute to him the writing of the letter published in The Reveille. In the absence of affirmative testimony to that effect, it cannot be said that those responsible for the news item and for its publication in defendant's paper could have intended, by merely imputing to plaintiff the authorship of that letter, to defame and expose to public hatred, contempt, and ridicule a person wholly unknown to them.

Plaintiff did not base his action upon any adverse criticism of his character or standing contained in the article published by defendant. His complaint is that defendant falsely imputed to him the writing of

the letter which was published in The Reveille.

The article complained of, as published in defendant's newspaper, was a news item. It merely mentioned the fact that Manuel Santana, a student at the Louisiana State University, had assailed the spirit of pacifism in youths of the United States. It made no comment further than to say that Manuel Santana "deplored such an attitude" on the part of the youth of America.

In the case of Tuyes v. Chambers, 144 La. 723, 81 So. 265, 267, we said that it is an established legal principle that there are "two species of injury which flow from slander or libel—the one resulting from the very nature of the words or writing, in certain cases, in which the law presumes injury; and the other known as special damages, which must be alleged and proved."

This legal principle is recognized not only here but generally by the courts of other states. See 17 R.C.L. Sec. 4, 264; 25 Cyc. 249; 36 C.J. § 17, p. 1150, and the cases cited.

Plaintiff's cause of action is grounded upon the proposition that defendant, by the publication complained of, has imputed to him "acts which tend to disgrace him and deprive him of the confidence and good will of society, * * * holding him up to public hatred, ridicule and contempt".

The "acts" attributed to plaintiff by defendant are writing and causing to be published in The Reveille the letter quoted above.

The letter speaks for itself. When read as a whole, it is not such a writing as would naturally or necessarily injure the reputation, character, or standing of its author, or expose him to public hatred, contempt, or ridicule. It does not impute cowardice or lack of patriotism to the young men of America. On the contrary, the writer states, in substance, that young men tell him they are willing to defend their country if attacked but are not willing "to pack a rifle over there". The writer says they frown on what they consider "war propaganda". The writer's opinion seems to be that they are pacifists —they want peace. He is surprised to find that such spirit prevails among the young men of America and is "very much disappointed in them". He says nothing about the boys who are students at Louisiana State University but speaks of "the boys in the United States" generally.

There is nothing in the letter which can be construed as a reflection upon our American youth, and nothing which naturally should tend to engender in the minds of the students on the campus animosity, hatred, or ill will toward the author of that letter. It is no reflection upon anyone to say of him that he is against foreign wars. It is a matter of common knowledge that a vast majority of the people of the United States are opposed to this country's engaging in a war on foreign soil. According to press reports, a very prominent United States senator re-

cently said on the floor of the Senate: "The United States will not enter another war to be fought on foreign soil. We will not go to war until our shores are invaded."

In so stating, he expressed the sentiment which the writer of the letter referred to says is entertained by the boys of America. It is also a matter of common knowledge that a vast majority of the students attending some of the leading universities of this country have gone on record as opposing war except in case our own shores are invaded. A writing which imputes to the American youth a view concerning foreign wars which is entertained generally by the American people is not a libelous writing.

It follows that defendant's publication, which merely imputed to plaintiff the writing of that letter, did not inflict that species of injury which results "from the very nature of the words or writing", from which "the law presumes injury".

Plaintiff is therefore entitled to only such special damages as he alleged and proved. As we have said, there is no ground for holding that defendant's agents were guilty of any malice or ill will against plaintiff. They were never asked to correct the mistake which they had made. In fact, it is not shown that anyone connected with the paper knew that plaintiff felt injured by the publication. The record shows that the article complained of was published on January 19, and that the suit was filed on February 7, without notice or demand previously made by plaintiff. The error made by defendant was due to the

negligence of its Baton Rouge reporter. But, even though there was no injury intended and although the publication was not malicious, plaintiff is entitled to recover if in fact he has been damaged by defendant's error. In the case of Upton v. Times-Democrat Publishing Co., 104 La. 141, 28 So. 970, 971, this court said:

"For injury resulting from oversight or negligence, even when there is no malice or evil intent, may give rise to liability in damages. A newspaper would yet be liable if an injurious untruth should find its way into its columns, though by the merest accident. The law seeks to protect the innocent who has been injured by libelous reports. The fact that a management may be all that can be expected to guard against unfortunate accidents is not in itself a protection from damages and a sufficient defense."

As relates to the special damages which plaintiff claims he sustained, he failed to make out his case against the defendant. He alleged and proved that some of the students on the campus believed he was the author of the letter and, so believing, treated him with contempt, ridiculed and maligned him, all of which, he said, had wounded his feelings and caused him great embarrassment. He alleged and testified that this had caused him mental suffering. Mental suffering alone can be made the basis for damages. Jozsa v. Moroney, 125 La. 813, 51 So. 908, 27 L.R.A.,N.S., 1041, 19 Ann.Cas. 1193. But defendant is not liable for the damages which plaintiff sustained in the absence of proof that its publication brought about

the conditions which plaintiff says caused his damage. Plaintiff failed to make this necessary proof. Not only did he fail to make this proof, but it definitely appears from his own testimony, and from a letter he wrote to the editor of The Reveille, that the students on the campus believed, from the time they read the original letter as published in that student paper, that he was the author of that letter. The testimony fails to show that the students on the campus were induced to believe that he was the author of that letter by reading defendant's paper.

The facts are that the original letter appeared in the issue of The Reveille dated January 18. Whether that issue of the student paper was distributed on the campus on the morning or the afternoon of that day does not appear from the evidence. But evidently plaintiff read it at some time during that day, because on that same day he addressed a letter to the editor of The Reveille, which letter was published in the issue dated January 21, in which he disclaimed authorship of the original letter. The disclaimer letter is copied in full on page 21 of the record. It is headed: "University, La. Jan. 18, 1938 To the Editor Reveille: Dear Sir". The opening sentences of that letter read as follows:

"Since I am the only Santana registered here at L. S. U., I wish to disclaim authorship of, or any connection with, the letter concerning the unwarlike spirit of American youth as published in the Reveille of Tuesday, Jan. 18, 1938. * * * We are United States citizens too, and we have every respect for this great nation. This respect has been proved to me, for *in consequence of that abominable letter, I have been ostracized by my Puerto Rican friends.*" (Italics ours.)

This letter was written the day before the news item complained of was published in defendant's paper. At the trial of the case, plaintiff was questioned as to when he wrote the disclaimer letter. His answers are conflicting. He first stated that, when he wrote the letter, he knew of the item published in defendant's paper. He was then asked:

"Q. Then why didn't you say something in this letter that the article appearing in the Item was incorrect?

"A. Because the article appeared the 21st. I wrote the letter for the Reveille and I took the letter to the Reveille before the article in the Item appeared."

The latter statement, taken in connection with what plaintiff stated in the letter itself, makes it clear, we think, that the letter was written and carried to the editor of The Reveille before the news item in defendant's paper was published.

The news item which plaintiff alleges defamed him appeared in the issue of defendant's paper printed in the afternoon of January 19, at least 24 hours after plaintiff wrote the disclaimer. And yet, in the disclaimer letter, he says that in consequence of that abominable letter he had been ostracized by his Puerto Rican friends.

Referring again to plaintiff's testimony taken at the trial, he was asked on cross-

examination when he first saw the article published in The Item. His reply was that he saw it on the same day, "but the night, the evening, the evening of the 19th". He said he went to the campus the following day, which was the 20th. He was asked whether anyone said anything to him about the article (meaning the article in The New Orleans Item). His reply was, "They looked angry because of the article." He said "they were looking who was Santana and somebody would tell, that fellow going there is Santana".

He was then asked whether the article in The Reveille was not published on the 18th, and he said it was. He said he went on the campus on that day. He was asked, "And how did the people look at you then?"

"A. They were the same.

"Q. And they wanted to know who Santana was then?

"A. Yes, sir.

"Q. In other words, the people on the campus acted toward you the same on the 18th as on the 19th?

"A. Sure."

At the trial plaintiff gave the following testimony, as shown at page 66 of the record:

"Q. Now, on the day after the original letter was published in the Reveille, did anything happen to you with photographers or reporters?

"A. Yes. On one occasion after they published the article in the Reveille I was there in the English class and there went a photographer to take a picture of my person, because of this article that appeared in the Reveille."

It is perfectly evident, we think, that the sensation and confusion which arose on the campus because of the letter originally published in The Reveille were not brought about by the article published in defendant's paper on the 19th. The confusion arose immediately following the publication of the letter in The Reveille. Plaintiff says so, and, furthermore, his disclaimer letter shows it. The testimony shows that The Reveille is distributed and widely read on the campus. But there is nothing to show that any considerable number of the students read the New Orleans paper. Plaintiff named four young men who he said had read the New Orleans paper, but he did not call them to testify. Defendant called seven students, each of whom said he had either read, or heard read, the letter published in The Reveille. Five of them stated that they had not seen the New Orleans paper. The other two were not asked whether they had seen it. Defendant's Baton Rouge reporter testified that she did not see the article which she had sent in, although she had looked for it. We note that the article occupied an inconspicuous place on page 22 of the paper.

It is possible, of course, that the article appearing in defendant's paper had some connection with the confusion which arose, but it is not probable that it did. In fact, there is no testimony except the bare, uncorroborated statement of plaintiff that it did.

For the reasons assigned, the judgment dismissing plaintiff's suit at his costs is affirmed.

PONDER, J., concurs.

HIGGINS, J., concurs in the decree.

FOURNET, J., being of the opinion that plaintiff is at least entitled to nominal damages, therefore dissents.