## No. 13,501.

### THOMAS J. UPTON vs. TIMES-DEMOCRAT PUBLISHING COMPANY.

#### SYLLABUS.

1. In this action, brought to recover damages for publishing a dispatch intended originally to be complimentary, changed by mistake in its transmission by the substituting of the word "colored" for "cultured," small amount of damages is allowed.
2. The publication was not, in so far as defendant is concerned, prompted by malice, nor was it the result of negligence. Due retraction and apology were made within reasonable time.
3. There was a cause of action, and to the extent of the injury the action is sustained.

APPEAL from the Civil District Court, Parish of Orleans.— Theard, J.

---

*D. M. & Allan Sholars* for Plaintiff, Appellant.

---

*Lawrence O'Donnell* for Defendant, Appellee.

---

*E. Howard McCaleb* for Postal Telegraph Company, Called in Warranty, Appellee.

---

The opinion of the court was delivered by

BREAUX, J. Plaintiff sued the defendant for damages in the sum of five thousand dollars for publishing a telegraphic dispatch, in which it was stated that "The Rev. Thos. J. Upton is a negro."

It appears that at a meeting of the Police Jury of the parish of East Baton Rouge, a petition was read by the Rev. Upton, asking that body to order an election in that parish with a view of prohibiting the sale of intoxicating liquors. There was a counter petition presented by another resident of the parish in favor of the indefinite postponement of such an election.

The Baton Rouge correspondent of the defendant company sent a telegraphic account of the meeting to that company for publication. The correspondent and representative of that newspaper in Baton Rouge, prompted by a desire to be complimentary to the Rev Mr. Upton, stated in the dispatch that he, Upton, by whom the petition for an election was presented, was a cultured gentleman; and that his arguments in favor of an election were eloquently presented. In transmitting the dispatch, a mistake was made. The word "cultured," as written by this correspondent, was changed to "colored," and the dispatch read that a "colored gentleman," instead of a "cultured gentleman," had presented the petition. At the office of the Times-Democrat, the words "colored gentleman" were changed to "negro," for the reason that the latter word is always used by that paper as the proper word.

Naturally enough, the dispatch coming to plaintiff as it did, must have aroused his indignation. He lost no time in seeking the redress to which he was justly entitled.

The day of the publication (viz. 13th September, 1900) of the telegram in question, he wrote to the proprietors of the Times-Democrat, complaining of the gross injustice done him, and informing them that he had placed the matter in the hands of his attorneys. This letter was received the day after it had been written.

The assistant editor of the newspaper, in charge in the absence of the night editor, received notice by telegram from the Baton Rouge correspondent of the newspaper at about twelve o'clock at night, September 13th, stating that a mistake had been made in the issue of that day by changing "cultured" to "colored." This was the first intimation of the mistake. It was received too late, defendant urges, to correct the error in the paper of the 14th, as there was some rush in issuing the paper; and, furthermore, there was no time that night to make the investigation, which the night editor in charge desired to make, in order to place the responsibility where it belonged.

In answer to Mr. Upton's letter, received on the 14th of September, this assistant editor wrote a retraction, and, in substance, stated that the mistake had been made by the Telegraph Company; that they were sorry that a mistake had been made; that the word had come to them "colored" instead of "cultured;" and that the moment they found out the mistake, they determined to retract and that to the retraction would be given the same prominence as had been given to the original mistake. The retraction of the Times-Democrat was published on the fifteenth day of September, and stated that Rev. Upton was of the purest Caucasian race; that he was at one time the president of the Homer College, in Claiborne Parish, and that he is an eminent minister of the Gospel, a member of the Louisiana Conference of the Methodist Church and pastor of the Zachary Church in East Baton Rouge.

In the pleadings, in answer to plaintiff's demand for damages, defendant disclaimed having been actuated by malice; alleged that the error had been committed by the Telegraph Company, and averred that the mistake was timely corrected after it had been discovered.

Defendant called the Postal Telegraph Company in warranty. The company thus called in warranty, interposed an exception of no cause of action, for the reason that libel is a *quasi*--offence, and no warranty exists where damage is claimed for an offence or *quasi*-offence. This exception was sustained, and no appeal was taken from the order dismissing the prayer for a call in warranty. In consequence, the issues before the court are, exclusively, confined to judgment for plaintiff against the defendant.

The judge of the District Court pronounced judgment in favor of Thomas J. Upton, and against the defendant, the Times-Democrat Publishing Company, for fifty dollars, with interest from the date of the judgment. From the judgment, plaintiff prosecutes this appeal.

The word complained of was provoking to an extreme degree. Inserted as it was in one of the daily papers, it was enough to arouse the most profound indignation of the most patient man. Plaintiff, naturally, at once, took steps to find out how it was that he was referred to as not being a white man.

Taking up the facts for review, we, in the first place, note, as one of the incidents of the case, that those in charge of the defendant company did not know the plaintiff at all. When the mistake was called to the editor's attention late at night of the day of publication, he chose

to wait and find out how it was that such a mistake had been committed. We may as well say here, we take it that the change from "colored gentleman" to "negro" as made, presents no ground of complaint. One expression, "colored gentleman," was as objectionable as the other, "negro." We have noted that the night editor desired, before making a retraction, to fix the responsibility where it belonged, and to that end to make further inquiry. He postponed all steps in the matter to the day after the offending dispatch had been published. The next day, the 14th of September, the defendant company received a letter from plaintiff complaining of the outrageous wrong. In answer to this letter, defendant stated that it was a mistake committed by the Telegraph Company; that the word came to the company for publication, "colored" and not "cultured," and that complete retraction would be made. The retraction was written and the defendant sought to give it all the publicity and prominence that had been given to the mistake.

Had the steps taken by the plaintiff to discover and bring to light the error made by the defendant, been met on the part of the defendant with unwillingness and reluctance to correct it and right the wrong, there would have been some cause to complain of intentional wrong and malice, and to claim not only actual but exemplary damages. Such is not the case.

We have not found that the defendant was, at any time, unwilling to publish a retraction and apology. The cause of the delay of twenty-four hours before the retraction and apology were published, in view of the circumstances as alleged and sustained by the testimony, do not present the appearance of injuriously intended delay.

From the evidence before us, we meet with no difficulty in arriving at the conclusion that the retraction and the apology were full and complete, and that they were as timely made as the occasion permitted.

But retraction and apology, even when timely, are not all that is needful to relieve a publishing company from liability. For injury resulting from oversight or negligence, even when there is no malice or evil intent, may give rise to liability in damages. A newspaper would yet be liable if an injurious untruth should find its way into its columns, though by the merest accident. The law seeks to protect the innocent who has been injured by libellous reports. The fact that a

management may be all that can be expected to guard against unfortunate accidents is not, in itself, a protection from damages and a sufficient defence.

This brings us to a consideration of the damages which should be allowed. There is no question of exemplary damages. Now as to *actual* damages, they cannot, in view of the facts, be assessed at any other than a very limited amount. The claim, after all, grows out of a mere mistake. Counsel for plaintiff cites several decisions of this court relating to damages against newspapers for libellous publications in which damages for considerable sums were allowed. They were not similar to the case before us for decision. In each case false accusations had been brought, most of them before the courts. The publishers of the libellous reports were not free from blame. They had published charges which should not have been published. In those cases, growing out of court proceedings, the newspapers condemned to pay damages were not the chroniclers of events as they had occurred, but went beyond to publish comments regarding the facts, and this must have given rise to an appearance of wrong.

In the case before us, there is nothing of the sort. It was the publishing of a mistake for which the defendant was in no way responsible. We have to deal, as relates to damages, only with the real and actual, and not with the exemplary and punitive.

In our view, the real injury sustained must have been very inconsiderable. The untruth published could not have had the least effect, even for a moment. To illustrate: If one who has marked moral character, great prestige, and austere probity, is accidentally charged with having committed an improper act, the charge, as relates to actual damages, would have no great effect; or if, as in the case before us for decision, the name of one of well known lineage should, by the merest accident, be characterized untruthfully, the actual damages would be inconsiderable.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed at appellant's costs.