————o————

No. 4182.

(Court of Appeal, Parish of Orleans.)

## CHARLES A. RAGAN vs. DAILY STATES PUBLISHING CO., LTD.

In an action for damages for a libelous publication by a newspaper which is the result of inadvertence and pure accident, for which inadvertence and accident the paper was not primarily at fault, and where, consequently, there is an absolute want of malice, due and prompt retraction and apology being preferred by the newspaper, but in its stead, and at the plaintiff's request, the publication of a letter from plaintiff's attorney correcting the error is promptly made in the following day's edition of the paper and is given prominent place in the paper with appropriate headlines written by the editor and conspicuously displayed in the paper, merely nominal damages will be awarded.

Appeal from Civil District Court, Division "C."

McConnell & Tullis, for Plaintiff and Appellee.

T. H. Thorpe, for Defendant and Appellant.

MOORE, J. This was a suit for libel based upon the pub-

lication of the following news item in the defendant's newspaper:

"EMBEZZLED $14 DOLLARS."

"Charles A. Ragan was charged in an affidavit in the First City Criminal Court this morning with embezzlement of $14 entrusted to his keeping while collecting for the Columbia Phonograph Company, of Canal and St. Charles Streets.

"The affidavit against the young collector was made by Henry Williams, the manager of the concern, who stated that Ragan was entrusted with the amount, and that he failed to account for same.

"Ragan was arraigned on the charge, pleaded not guilty and placed under a bond of $250.00."

The publication appeared on an inner page of the defendant newspaper on the 27th September, 1905. The publication misstated the facts, the truth being that Charles A. Ragan was not the collector of the Columbia Phonograph Company, nor was Henry Williams the manager of the concern; on the contrary, Henry Williams was the collector and Charles A. Ragan was the manager and the affidavit for embezzlement had been made by Ragan aaginst Williams. The naming of the prosecutor as the defendant and the latter as the prosecutor resulted from inadvertence and pure accident on the part of the reporter who furnished said item to the defendant publishing company, and it occurred in this wise: It appears that it is a custom which has long prevailed in the First City Criminal Court, for the affidavit clerk thereof to keep a slip or memorandum upon which he enters the number of the affidavit, the name of the affiant, the name of the accused, the nature of the charge and such other matters as may concern the case, of all complaints or affidavits made during the day. This he does for the convenience and information of the newspaper reporters. In the evening the slip or memorandum is destroyed and proper and similar entries are then made in his regular docket. The affidavit in the instant cause was made between 11 o'clock a. m. and 1 o'clock p. m. of the day the item complained of appeared in defendant's newspaper. In entering up this affidavit on the slip or memorandum kept by the affidavit clerk, the latter inadvertently transposed the names and made the prosecutor the accused. The States reporter, visiting the First City Criminal

406

Court on the day this entry was made and making up his report of new cases filed therein, took from the slip thus kept by the affidavit clerk, the memorandum showing Ragan to be the accused, Williams to be the accuser and the sum embezzled to be the amount stated; and, from inquiry at the clerk's office, ascertained that the accuser was the manager and the accused the collector of the Columbia Phonograph Company. Assuming all this to be correct he wrote and had printed in the 2.30 edition of the States of the same day, the item *supra*.

On the following morning the city editor of the paper, being apprised by some one in the business office of the error which had been committed, at once wrote a statement of the case, expressing the regret of the paper that the error had occurred; stating that it was due entirely to a mixing of the names of the principals in the case; that Mr. Ragan was well known in the business community and that the paper did not suppose that anyone could fail to see that an error was made. The article was marked to be "double-leaded" and printed on the first page of the paper, which was to go to press the next afternoon at 2:30 o'clock. After the article was sent up to be set to type, the circulation manager of the defendant paper brought to the city editor a letter from plaintiff's lawyers making the correction and asking that the letter be published at once and that it be given equal prominence with the incorrect statement. The city editor was of opinion, after reading the letter, that the correction which he had written and would have printed in that afternoon's edition of the paper, would place Mr. Ragan in even a better light before the public coming as it was from the paper and expressing the paper's regrets and so expressing himself to the circulation manager he requested the latter to convey these views to the plaintiff by phone and to inquire of the latter whether he wanted the letter printed or the correction that the paper itself would make. Mr. Knecht, the circulation manager, informed plaintiff over the phone of the views of the city editor, Mr. Ross, and inquired of plaintiff his wishes in the premises. The answer was that he, plaintiff, would consult his lawyers and let him know. Some time thereafter plaintiff called up Mr. Knecht over the phone and informed him that he simply wanted the letter of his lawyer printed. Thereupon the correction written by the city editor was "killed" and the

letter of the lawyers conspicuously printed on the first page of the paper and near the top, being preceded by appropriate headlines written by the city editor and printed in large type. No other demand was made of the defendant and the plaintiff, who was then a patron of the paper, as an advertiser, continued so up to the day of the trial below, which took place nearly two years after the date of the publication complained of. At the time of the publication friendly personal relations existed between the palintiff and Mr. Knecht, the circulation manager, and Mr. Arthur Brown, the assistant manager, the only attachees of the paper who had personal acquaintance with the plaintiff. and these relations have ever since existed. From th publiction of the letter from the attorneys no reference to the subject was made by the plaintiff to any one connected with the defencant, save that on one occasion—a day or two after the puulication—plaintiff remarked to Knecht that he thought that some friend of Williams had caused the erroneous report to be made and that there was malice in it. The silence and inaction of the plaintiff had led the defendant to believe that the incident was closed; that the plaintiff was satisfied, and that he felt no resentment whatsoever; when, without a new demand, request or intimation that anything more was desired or expected of defendant, he filed six months after the publication, his suit claiming two thousand dollars damages.

Although the cause was tried below sixteen months after the publication, but two witnesses were produced to prove the spread of the article charged as the libel. One testified that he had read the article published on the 27th, but not that published on the 28th, and that, though an intimate friend of the plaintiff, he never called on him to make any inquiry of the matter.

The other testified that he had read the article of the 27th, was satisfied that it was a mere mistake in the print and gave it no further thought. Neither they nor the plaintiff himself say that he had lost a single customer, friend or acquaintance or that any person had spoken to him, or of him, in connection with this incident or that it had given him any worry, distress or concern whatsoever. Under the facts stated it is clear that there was no malice in the publication and that the defendant was prompt to offer to publish a retraction

and apology, even when timely, are not all that is needful to
dant understood the plaintiff to prefer the printing of his
lawyer's letter instead and which letter was promptly printed
in the next issue of the paper. "But," as said in Upton vs.
Times-Democrat Publishing Company 104 La. 141, "retraction
and apology, even when timely, are not all that is needful to
relieve a publishing company from liability for injury re-
sulting from oversight or negligence, even when there is no
malice or evil intent, may give rise to liability in damages. A
newspaper would yet be liable if an injurious untruth should
find its way into its columns, though by the merest accident."
In such cases, however, mere nominal damages are allowed.
In the case cited, the error was deliberately made in the editorial
rooms by the reconstruction by the telegraph editor of a tele-
gram received from its correspondent in Baton Rouge who had
written the dispatch describing the plaintiff in that suit as a
"cultured gentleman," transmitted by the operator as "colored
gentleman," and reconstructed as aforesaid, and published, a
"negro." As the Court there said, "The word complained
of was provoking to an extreme degree . . . . . . . . it was enough
to arouse the most profound indignation of the most patient
man," and as said in Sportonio vs. Fourichou 40 An. 423:
"Under the social habits, customs and prejudices prevailing in
Louisiana, it cannot be disputed that charging a white man with
being a negro is calculated to inflict injury and damages."
Nevertheless the damages awarded by the District Court in the
Upton case was but fifty dollars, which the Supreme Court re-
fused to increase. Compared with the Upton case, the charge
in the instant case, considering all the circumstances connected
w th it, is not calculated to inflict half the injury and damages
as does the charge in the former case. The damages allowed
in the instant case are, in our opinion, excessive and should be
reduced to a mere nominal amount which we fix at twenty-five
dollars.

It is, therefore, ordered, adjudged and decreed that the judg-
ment appealed from be and the same is hereby amended by
reducing the amount thereof to the sum of twenty-five dollars
and that as thus amended the judgment is affirmed. The
costs of the lower Court to be taxed against the defendant **and**

409

those of the this Court against the plaintiff and appellee.

June 17th, 1907.

Rehearing refused June 28, 1907.

Writ denied by Supreme Court Aug. 12, 1907.