LAND, J.
 

 Plaintiffs sue defendant company for damages in the sum of $5,000 for the publication of an alleged libelous article affecting their minor son, Travis Barnhill.
 

 Judgment was rendered in the lower court for plaintiffs on behalf of their son in the sum of $250, and defendant company has appealed.
 

 During August, 1925, the following telegram from the Associated Press was published by defendant company in the Times-Picayune, a New Orleans daily newspaper:
 

 “Tar and Feathers Applied.
 

 “Leesville; La., Aug. 10 — The first tar and feather episode in this territory in several months occurred here last night when Travis Barnhill was dumped from an automobile by a group of masked men after he had been seized at a restaurant earlier in the night and taken to the woods. When ejected from the car he wore only a shirt and a coat of tar and feathers. Barnhill had been warned against alleged mistreatment of his wife.”
 

 Later the following correction was made in the Times-Picayune by defendant company:
 

 “Truly Barnhill ^Tarred.
 

 “Report Involving Relative Corrected After Error Is Revealed.
 

 “Leesville, La., Aug. 23 — -An erroneous report August 9 from here said Travis Barnhill had been seized by masked men, taken to' the country and given a coat of tar and feathers. The masked men were reported to have accused Travis Barnhill of mistreating his wife. Subsequent investigation shows that Travis Barnhill was not the man attacked and accused. It was Truly Barnhill. The names of the two men, who are relatives, were confused in the first reports. Travis Barnhill was not involved.”
 

 Plaintiffs claim actual damages in the sum of $2,500 and damages for humiliation and to reputation in the sum of $2,500.
 

 At about the time of the publication of the article complained of, Travis Barnhill and his elder brother, Truly Barnhill, worked at a restaurant in Leesville, Vernon parish. Travis Barnhill was 19 years of age and unmarried. Truly Barnhill was married, and was tarred and feathered for alleged mistreatment of his wife. These facts were well known to the townsmen of both of the brothers.
 

 Travis Barnhill and Truly Barnhill were strangers to .respondent, and the naming of Travis Barnhill in the article published resulted from the error of confusing the two brothers in the gathering of the news, which was received by respondent as a dispatch from the Associated Press. The news was published by respondent, as it was accepted
 
 *289
 
 as correct and came from a reliable source. Tlie facts of tlie case show a total absence of malice or ill will on the part of respondent in publishing the article in question/and a full correction was made as soon as the error was discovered.
 

 However, this state of facts does not wholly exonerate respondent from all liability. As said by this 'court in Vicknair v. Daily States Pub. Co., 153 La. 680, 681, 96 So. 529, 530:
 

 “Plaintiff may recover compensatory damages, regardless of whether there was any actual malice or not. The malice imputed to a publisher of a libel is not personal ill will, but merely legal malice implied from willfully and wantonly doing an unlawful act which results in injury. Weil v. Israel, 42 La. Ann. 962, 8 So. 826; Covington v. Roberson, 111 La. 326, 35 So. 586; Hall v. Ewing, 140 La. 908, 74 So. 190; Flanagan v. Nicholson Pub. Co., 137 La. 588, 68 So. 964, L. R. A. 1917E, 510, Ann. Cas. 1917B, 402.
 

 “Under the laws of Louisiana, libel is a quasi offense, actionable under the broad provisions of article 2315 of the Civil Code:
 

 “ ‘Every act whatever of man that causes damage to another, obliges him by whose fault it happens to repair it.’
 

 “All that is necessary in this state f<jr a party demanding damages from another for a libel is to allege a condition of things such as would show ‘a fault’ on the part of the defendant, resulting in damages and injury to himself therefrom, and on the trial of the case to establish the truth of the allegations. Covington v. Roberson, 111 La. 326, 35
 
 So.
 
 586; Hall v. Ewing, 140 La. 908, 74 So. 190; Spotorno v. Fourichon, 40 La. Ann. 424, 4 So. 71; Warner v. Clark, 45 La. Ann. 863, 13 So. 203, 21 L. R. A. 502.’’
 

 In the case of Upton v. Times-Democrat Publishing Co., 104 La. 144, 28 So. 970, 971, this court said: “For injury resulting from oversight or negligence, even when ther.e is no malice or evil intent, may give rise to liability in damages. A newspaper would yet be liable if an injurious untruth should find its way into its columns, though by the merest accident. The law seeks to protect the innocent who has been injured by libelous reports. The fact that a management may be all that can be expected to guard against unfortunate accidents is not in itself a protection from damages and a sufficient defense.”
 

 Necessarily, a publisher of a newspaper must collect news items through. reporters and other agents. If a publisher is not held responsible for the fault or negligence of such agents in gathering news and sending in to the paper libelous reports, then recovery of damages in such cases could not be had, and the law of libel would become a dead letter in this state.
 

 However, the facts of this case show that Travis Barnhill has suffered xno serious' damage to his reputation, and no loss of position ; nor has he failed to obtain employment on account of the article published by defendant company.
 

 It was generally known in Leesville, where Travis Barnhill lived, that he-was unmarried, and that the article in question referred to his brother, Truly Barnhill, who had a wife.
 

 Besides, Travis Barnhill, who is only 19 years of age, was not known outside of his own bailiwick. He may have been nagged or annoyed to some extent by being questioned about the matter, but, under the circumstances of the ease, he has suffered slight damages only from the alleged humiliation, and we feel that an award of $25 will suffice. •
 

 
 *291
 
 It is therefore ordered that the judgment appealed from be amended by reducing the ,sum awarded in the lower court to plaintiffs on behalf of their son from $250 to $25, and by condemning defendant company to pay the costs of the appeal and of the court below.
 

 It is now ordered that the judgment, as amended, be affirmed.
 

 O'NIELL, C. J.,
 

 is of the opinion that the damages claimed were so grossly and so manifestly exaggerated by the plaintiff in his petition, as is shown by the allowance of only $25 damages, that this court ought to exercise its jurisdiction only to the extent of transferring the case to the Court of Appeal, and condemning the plaintiff to pay the costs of the appeal to the Supreme Court.