315 So.2d 393 (1975)
Carlton WILSON, Jr., Plaintiff-Appellee,
v.
CAPITAL CITY PRESS, Defendant-Appellant.
No. 5045.
Court of Appeal of Louisiana, Third Circuit.
July 3, 1975.
Rehearing Denied July 24, 1975.
Writ Refused October 10, 1975.
*394 F. W. Middleton, Jr., Baton Rouge, for defendant-appellant.
L. Hallman Woods, New Iberia, for plaintiff-appellee.
Before FRUGE, MILLER, and DOMENGEAUX, JJ.
FRUGE, Judge.
The defendant, Capital City Press, appeals from a judgment in favor of plaintiff, Carlton Wilson for defamation. The action stems from an article appearing in the Morning Advocate on March 8, 1974 in which the plaintiff was listed as having been arrested in a major drug raid for distribution of marijuana. In fact, plaintiff was not arrested. The trial court awarded plaintiff judgment in the amount of $3,000. Plaintiff has answered defendant's appeal requesting an increase in the award to $15,000.
The plaintiff Carlton Wilson is a resident of Cade, Louisiana in St. Martin Parish. The defendant Capital City Press is a Louisiana Corporation domiciled in Baton Rouge and is owner and publisher of two Baton Rouge daily newspapers, the Morning Advocate and the State-Times. The Morning Advocate is circulated throughout South Louisiana.
The March 8, 1974 Morning Advocate article which is the subject of this suit concerned a drug raid conducted by various law enforcement agencies in a seven parish area of South Louisiana, including St. Martin Parish. The raid was coordinated by the Louisiana State Police. In the article the Morning Advocate listed the names of 136 persons arrested in the raid and listed the charges against them. Plaintiff's name was included in the list as having been arrested and charged with distribution of marijuana. However, plaintiff, had not, in fact, been arrested or charged with any crime related to the drug raids.
The drug raid in question was conducted on March 6 and 7, 1974. The management of the Morning Advocate had been apprised by the State Police that the raid would be conducted. The Advocate assigned an experienced reporter, Mr. Roy Miller, to cover this story. Miller went to Lafayette to State Police Headquarters where activities *395 in connection with the raid were being coordinated.
On March 7, the first article appeared in the Morning Advocate concerning the drug raid, but did not contain a list of names of persons arrested. A second article appeared that afternoon in the State-Times which listed the names of 99 persons arrested and charged. These names were furnished to Miller by Ann McCoy who represents the Louisiana State Police as public relations director. After this second article was published Miller again contacted the State Police through Ann McCoy who furnished 37 additional names of persons arrested and charged in the raid. Included among these 37 names was that of the plaintiff, Carlton Wilson, who was allegedly arrested and charged with distribution of marijuana.
Upon receipt of this information Miller prepared the article published in the Morning Advocate March 8 and included the additional names furnished by Ann McCoy including that of the plaintiff.
Although the trial court found that Ann McCoy used a "tentative" rather than a final list in releasing the names of those arrested, the record does not bear this out. Prior to the raid the State Police did compile a tentative list of persons to be arrested in the raid. This list was compiled by Lt. Donald J. Breaux from names submitted by undercover agents. The names were then rechecked by the State Police. Once all of the names on the tentative list were checked out a final list was drawn up of those to be arrested.
The list released by Ann McCoy was a master list of those actually arrested and charged drawn up by Sergeant Danny Brown of the State Police from names submitted by each parish. This list was given to Ann McCoy for release to the press by Lt. Breaux's office. In deposition both Ann McCoy and Lt. Breaux emphasized that this list was compiled from names of persons actually arrested and charged and was a final list, not a preliminary or tentative one. Neither Lt. Breaux nor Ann McCoy had any explanation for how plaintiff's name appeared on the list.
Subsequent to the publication of the article and on or about March 14, Wilson became aware of the news article and the fact that his name had appeared therein as one arrested and charged in the raid. On March 19, Wilson contacted Edwin Price, the managing editor of the Morning Advocate, who, the trial court found, "immediately and with all diligence checked Mr. Wilson's complaint." Upon finding Wilson's complaint to be just, Price printed a retraction on March 20 in both the Morning Advocate and the State-Times stating that the State Police release of names incorrectly included Carlton Wilson's name. The article stated that Wilson was not among persons for whom arrest warrants were issued.
Based on the above facts the trial court found that plaintiff had been illegally defamed and awarded judgment in his favor in the amount of $3,000. Defendant has appealed suspensively from that judgment and plaintiff has answered the appeal seeking an increase in the award.
On appeal defendant contends that the trial court erred in imposing liability without fault in contravention of the recent United States Supreme Court decision in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Defendant further contends that the information published was a "public record" under La. R.S. 44:1 and 44:3 and that publication of the information is therefore subject to a qualified privilege. Finally, defendant contends that this court should apply the standard of actual malice or reckless disregard for the truth espoused in the case of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1971) although application of that standard is no longer mandated under the Supreme Court decision in Gertz, supra.
In New York Times Co. v. Sullivan, supra, the Supreme Court held that a publisher *396 is privileged under the First Amendment in its criticism of "public officials" so that such an official cannot recover damages for defamatory falsehood relating to his official conduct "unless he proves that the statement was made with `actual malice'that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 279-280, 84 S.Ct. at 726. Later, in Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) this constitutional privilege was extended to "public figures". Finally, in Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), in a plurality opinion, the Supreme Court announced that the New York Times privilege extended to defamatory falsehood relating to private individuals if the statements concerned matters of general or public interest.
Recently, in Gertz v. Robert Welch, Inc., supra, the Supreme Court overruled the holding in Rosenbloom and held that "so long as they do not impose liability without fault, States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual" at least where "the substance of the defamatory statement `makes substantial danger to reputation apparent.'" 94 S.Ct. 3010-3011.
In the case before us defendant does not contend that the plaintiff Wilson is a public official or a public figure. Defendant does contend, however, that the drug raid and the arrests made are matters of general and public interest and that this court is free under Gertz to continue to apply the New York Times standard of liability i. e. actual malice. Defendant cites the following cases which have continued to follow Rosenbloom after the decision in Gertz: Walker v. Colorado Springs Sun, Inc., 538 P.2d 450 (Colo.1975); Aafco Heating and Air Conditioning Co. v. Northwest Pub., Inc., 321 N.E.2d 580 (Ind.App. 3rd Dist. 1974); Safarets, Inc. v. Gannet Co., Inc. 361 N.Y.S.2d 276 (N.Y.Sup.Ct.1974).
Our concern here is whether Louisiana provides any safeguards to the media with regard to the publication of injurious falsehood concerning a private person which go beyond the protections of the First Amendment as construed in Gertz.
In Francis v. Lake Charles American Press, 262 La. 875, 265 So.2d 206 (1972) the plaintiff was erroneously identified in a newspaper article as the criminal defendant who failed to show up for a court appearance on "peeping tom" charges. Plaintiff was actually the surety on the accused's appearance bond. The defendant contended that the article concerned an event of general or public interest and that under Rosenbloom v. Metromedia, Inc., supra, the New York Times rule applied. Our Supreme Court held that the case was not controlled by Rosenbloom because the plaintiff was not actually involved in the public event (the failure to appear) being reported. The court held:
"The publisher . . . cannot build a privilege by joining a private individual with an event of public interest when there is no factual connection between the two. . . . The keystone of the privilege is actual involvement, not the unsupported association of a name and an event. We hold that the constitutional privilege is unavailable in the present case." 265 So.2d at 218.
In the case before us the plaintiff Wilson was in no way involved in the reported event (the drug raid). There was no "actual involvement." We find no basis for applying the New York Times standard in this case, even assuming that Rosenbloom retains validity in Louisiana.[1] *397 Thus, the first amendment protects the defendant in this case only from the imposition of liability without fault. Gertz v. Robert Welch, Inc., supra.
In Louisiana defamation is a quasi offense and as such is governed by Louisiana Civil Code Article 2315. Wisemore v. First National Life Insurance Company, 190 La. 1011, 183 So. 247 (1938); Vicknair v. Daily States Pub. Co., 153 La. 677, 96 So. 529 (1923). In order for defamatory words to be actionable in Louisiana proof of the following elements are necessary:
1. Publication, that is, communication to some person other than the one defamed;
2. Falsity;
3. Malice, actual or implied; and
4. Resulting injury.
Rougeau v. Firestone Tire and Rubber Company, 274 So.2d 454 (La.App. 3rd Cir. 1973); Sas Taworsky v. Padfield, 211 So. 2d 122 (La.App. 3rd Cir. 1968); Comment 28 La.L.Rev. 82 (1967).
With regard to the requirement of malice, if the false words used are of a defamatory nature per se and there is a resulting injury, the law presumes malice and proof of actual malice is not required. Barnhill v. Times-Picayune Publishing Company, 171 La. 286, 131 So. 21 (1930); Parsons v. Gulf and South American Steamship Company, 194 So.2d 456 (La. App. 4th Cir. 1967); Comment 28 La.L. Rev. 82 (1967).
With regard to proof of injury Louisiana has recognized that injury to reputation can result simply from the character of the defamatory words, though proof of pecuniary loss is impossible. Jozsa v. Moroney, 125 La. 813, 51 So. 908 (1910); Comment 28, La.L.Rev. 82 (1967).
The trial court found that all of the elements outlined above were present in this case and accordingly found for the plaintiff.
Defendant contends that the imposition of liability in this case under the law as outlined above, would amount to an imposition of liability without fault. Specifically, it contends that the implication of malice applicable to words defamatory per se allows imposition of liability without fault.
It is apparent that under the Louisiana law of defamation as outlined above, it has been entirely possible for a publisher to be held liable although there was no "fault" on his part. Because of the imputation of malice where words of a defamatory nature are used, a publisher may be held liable although he has done everything within his power to check the accurateness of his news story. This has been acknowledged in our jurisprudence.
"A newspaper would yet be liable if an injurious untruth should find its way into its columns, though by the merest accident. The law seeks to protect the innocent who has been injured by libellous reports. The fact that a management may be all that can be expected to guard against unfortunate accidents is not in itself a protection from damages and a sufficient defense." Upton v. Times-Democrat Publishing Co., 104 La. 141, 28 So. 970, 971 (1900).
Under the mandate of Gertz v. Robert Welch, Inc., supra, a publisher may be held liable for defamatory falsehood only if there is some fault on his part. The Supreme Court did not hold that the printing of an untruth would itself constitute fault. There must be some culpability on the part of the publisher.
In the case before us the Morning Advocate's reporter, Roy Miller, relied on the news release prepared by the State Police. *398 No error was made by the paper, the names of those listed as arrested were accurately reproduced. Therefore, there can be liability in this case only if the Morning Advocate was at fault in relying on this press release.
The trial judge noted that Miller could have verified the press release by a check of the public records kept by the arresting authorities in the various parishes. Clearly had this procedure been followed the error would have been discovered prior to publication.
However, we do not think that the paper was under any duty to so verify the information in this case. Ann McCoy was a proper and authorized source of information concerning the drug raid. The list of persons arrested transmitted by her was a master listing of persons arrested compiled by Sergeant Brown in Lt. Breaux's office. Lt. Breaux's office was the central source for conducting and coordinating the raid. Neither Miller nor the Morning Advocate had any reason to doubt the correctness and authenticity of the information received. The source was reliable and in a proper position of authority and knowledge such that no fault can be attributed to Miller or the Morning Advocate for reliance on the information received.
We hold that there is no showing of fault, whether willful or negligent, on the part of Capital City Press in publishing plaintiff's name as having been arrested in the March 6 and 7 drug raid. Because there is no showing of fault on the part of the publisher the holding of the district court must be reversed. Gertz v. Robert Welch, Inc., supra. In light of this holding there is no need to discuss defendant-appellant's alternative specification of error that the information was privileged nor the answer to the appeal filed by plaintiff.
For the reasons assigned the judgment of the trial court is reversed. It is hereby ordered, adjudged and decreed that there be judgment in favor of the defendant Capital City Press dismissing plaintiff's suit at plaintiff's cost.
Reversed and rendered.
DOMENGEAUX, J., dissents and assigns reasons.
DOMENGEAUX, Judge (dissenting).
Gertz v. Robert Welch, Inc. very clearly states that so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual. The majority opinion sets out the standards as our State has applied them.
I cannot say that the district judge erred in finding fault on the part of the experienced reporter Mr. Miller, under the rather unusual facts of this case. The drug raid involved was a huge one, spreading over seven parishes, utilizing the joint efforts of the Louisiana State Police, Sheriff's deputies and other personnel from these parishes, and city police officers from various municipalities, and resulted in some 130 arrests. The State Police officials had notified the defendant newspaper of the impending raid and its widespread involvement with several different police agencies participating. Mr. Miller was assigned to cover the raid.
Regardless of the efficiency of such an operation, the mere fact that dozens of police officers and other personnel from divergent police groups are placed together on a joint police venture, such as the one involved herein, lends weight to a greater possibility of human error in many facets of the operation, and particularly in the field of proper identification of the persons sought out by the officers. Compounding the complexity of the situation was the fact that the names of the arrested persons were released in two apparently incomplete lists.
*399 The margin for error in proper identification and cataloging of the persons suspected, wanted for interrogation, and actually arrested and charged in a combined police operation, such as this one, was great. This experienced reporter should have known this.
Under normal and less confusing circumstances the reporter may have been justified in imparting for public consumption the name or names of persons arrested from information given him by an authorized police official, even though the name or names furnished would ultimately be shown to have been falsely included.
The trial judge found fault on the part of the reporter in not further verifying his information. I cannot say that the standard of care required of the reporter by the trial judge in this particular case is unjustified or unreasonable.
The trial judge did not violate the rule of Gertz. He found fault using Louisiana standards. I hesitate to say he was wrong.
I would affirm the trial court's decision, and therefore respectfully dissent.
NOTES
[1] We note that the U.S. Supreme Court indicated its disagreement with the rationale of Francis v. Lake Charles American Press in footnote 4 of its opinion in Gertz. 94 S.Ct. at 3002. However, since the Court in that case went on to overrule Rosenbloom and hold that the New York Times privilege was not constitutionally mandated in defamation cases regarding private persons, what is said in the footnote cannot be taken as a basis for this court to refuse to follow the rule established in Francis.