John G. MANALE, Plaintiff-Appellant
Cross-Appellee,

v.

CITY OF NEW ORLEANS, DEPART-
MENT OF POLICE, et al., Defend-
ants-Appellees Cross-Appellants.

No. 81–3043
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 15, 1982.

R. Glenn Cater, New Orleans, La., for plaintiff-appellant cross-appellee.

Sidney H. Cates, IV, Asst. City Atty., New Orleans, La., for defendants-appellees cross-appellants.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

John G. Manale, a former New Orleans police officer, brought this diversity action against the City, the Department of Police, and two police officers, charging them with reckless defamation and seeking damages in excess of $1,000,000. Trial before the District Court resulted in a verdict of $10,000 for Manale. He appealed, seeking a revision upward of the damage award. The City cross-appealed the District Court's findings and verdict. We affirm.

*Facts*

John G. Manale began his law enforcement career as a Police Cadet, a sort of apprentice, on July 8, 1974. Once he completed the cadet service, he enrolled in and ultimately graduated from the Police Academy. He was, it appears, to borrow from Gilbert and Sullivan, the very model of a modern police officer.[1] Awarded a Civil Service commendation from the President, Manale became the New Orleans Police Department's media representative, appearing on television and giving interviews to improve community relations.

In February 1976, Manale was assigned to the New Orleans Police Department, Fifth Police District. Shortly afterwards, Sergeants Donald Brewer and Joseph Orticke assumed duties in the same district. The sergeants and Manale, it is safe to say, did not get along. Orticke on one occasion and Brewer repeatedly referred to Manale in derogatory terms suggesting that he was a homosexual. Manale and several friends in the Department complained of the harassment. Things did not improve. On November 19, 1977, Manale and Orticke began an argument in the sergeant's office, for reasons unknown. Manale threatened to disclose Orticke's "misconduct" while serving as a ranking officer of the Fifth District. An intradepartmental investigation followed, after which Manale was dis-

1. *See* (or *hear*), *The Pirates of Penzance*   (1879).

charged for insubordination, untruthfulness and unfitness. His discharge, given his public familiarity, attracted substantial attention in the press.

Manale did not abandon his police career. He pursued his civil service remedies and, following a hearing, was reinstated with back pay in November 1978. Later that month, he resigned, citing working conditions and the desire to return to college as his reasons. Manale also alleges, but the record does not bear him out, that the Superintendent of Police promised that if he returned he would see nothing but custodial duty for the remainder of his tenure.

Manale returned to Ocean Springs, Mississippi, his hometown, and enrolled at Jefferson Davis Junior College. Late in 1979, having become a member of the Mormon faith, he moved to Utah and attended Brigham Young University in Provo. Either at that time or previously, he began to experience physical and psychological problems. Suffering from persistent insomnia, unable to concentrate, he saw a general practitioner in Provo who, after unsuccessful treatment with medication, referred him to a psychiatrist. The psychiatrist, Dr. Edward J. Faux, classified Manale as an obsessive-compulsive personality type. Although not undesirable, such a trait may, if the individual sustains a trauma which itself develops into an obsession, degenerate into a mental illness. Dr. Faux testified that the defendants' actions caused such a trauma and that Manale's prognosis for recovery was poor. Dr. Faux conceded that his diagnosis was summary. In order to do a complete, accurate evaluation of Manale's psychological and emotional problems, he needed information concerning family background and would have to perform a number of tests. Manale never underwent the tests and specifically requested the doctor not to contact his family about his treatment.

While in Utah, Manale applied for a job with a modeling agency. The agency requested verification of his employment from the Police Department, which replied that Manale had been fired for insubordination, untruthfulness and unfitness. On March 20, 1980, the Department's Personnel Director sent a letter to the agency correcting its earlier notice and explaining that Manale had, in fact, resigned. The Department's records revealed no other request for employment information. The Department not only corrected its records but offered to write a letter listing resignation as the reason for Manale's departure, but he never furnished it with the necessary list of names and addresses.

Manale alleged that the Police Department and individual officers recklessly defamed him by informing members of the public that he was discharged for being insubordinate, untruthful and unfit when, in fact, following the successful civil service appeal, he left the Department of his own volition. He also charged the two sergeants, Brewer and Orticke, with defamation for publicly insinuating that he was a homosexual.

### Proceedings Below

The District Court found that Manale had not proven that the individual defendants or the Department made defamatory statements of untruthfulness, insubordination or unfitness against him. Finding that Sergeant Orticke did not publicly label Manale a homosexual, it dismissed the complaint as to him. Manale has not appealed that order.

The Court *did* find that Sergeant Brewer engaged in a "continuous pattern of defamatory behavior". Witness after witness testified that in the presence of other police officers, Brewer addressed Manale by a variety of homosexual epithets. These comments subjected Manale to both the ridicule and the suspicion of his fellow officers, causing him "untold embarrassment and mental anguish". Brewer himself admitted that he had no knowledge of Manale's sexual preference or of the truth or falsity of his remarks. In addition, ranking officers of the Police Department, aware of Brewer's comments, had reprimanded him for impugning Manale's character. Nonetheless, the attacks continued.

The District Court found that Brewer's actions occurred within the scope and course of his employment and held the City vicariously liable for compensatory damages of $9,000 and punitive damages of $1,000, plus reasonable costs and attorneys' fees.

### Defame Is the Name of the Game

Our review of the factual findings of a District Court is governed by the "clearly erroneous" rule, F.R.Civ.P. 52(a). *McAllister v. United States*, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed.2d 20 (1954); *Williamson v. Brown*, 646 F.2d 196 (5th Cir. 1981). This eminently sensible cornerstone of federal judicial review places the primary responsibility for fact-finding upon the District Judge, who alone has first-hand opportunity to observe the witnesses and weigh their credibility. The District Judge distilled the important facts in her careful Findings of Fact and Conclusions of Law. Agreeing entirely with her disposition of this unhappy case, we affirm.

■ Manale's complaint sounds exclusively in tort under the Louisiana law of defamation. We begin with the quaint language of the Louisiana Civil Code: "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La.Civ.Code Ann. Art. 2315. Slander is a quasi offense actionable under this article. *Wisemore v. First National Life Insurance Company*, 190 La. 1011, 183 So. 247 (1938); *Wilson v. Capital City Press*, 315 So.2d 393, 397 (La.App.3d Cir. 1975), *writ ref'd*, 320 So.2d 203 (1975). If Brewer defamed Manale, with resulting damage, then he is liable.

■ For defamatory words to be actionable under Louisiana law, Manale bore the burden of proving four elements: (1) publication, i.e., communication to some person other than himself; (2) falsity; (3) malice, actual or implied; and (4) resulting injury. *Makofsky v. Cunningham*, 576 F.2d 1223 (5th Cir. 1978) (Rubin, J.), *citing Carter v. Catfish Cabin*, 316 So.2d 517 (La.App.2d Cir. 1975); *Wilson, supra; Rougeau v. Firestone Tire & Rubber Co.*, 274 So.2d 454 (La. App.3d Cir. 1973).

■ The threshold inquiry is whether the words were defamatory, *Catfish Cabin, supra* at 521. That Brewer voiced defamatory remarks, the evidence at trial establishes beyond doubt. Former officer Mike Caranbat testified that Brewer called Manale "a little fruit" during daily roll call. Officer Mike Smith testified that Brewer called Manale "gay" and "fruit" on several occasions. Officer Mike Delmada testified that Brewer, stopping him in the hallway, said "you're riding with the fruit tonight", referring to Manale. Brewer himself admitted that he said "where ya at ya little fruit" during roll call, referring once again to Manale. The officers' testimony that Brewer made his comments before a group of police officers also establishes the second required element, publication.

■ Louisiana law distinguishes between statements only susceptible of a defamatory meaning and those that are defamatory "per se". It defines the latter type as those having a tendency to deprive a person of the benefit of public confidence or to injure him in his occupation or reputation. *Barnhill v. Times Picayune Publishing Co.*, 171 La. 286, 131 So. 21 (1930); *Madison v. Bolton*, 234 La. 997, 102 So.2d 433, 438 (1958); *Wilson, supra. See also Brown v. News-World Publishing Corp.*, 245 So.2d 430 (La.App. 2d Cir. 1971). Malice and falsity are presumed and the burden shifts to the defendant to rebut the presumption. *Catfish Cabin, supra; Martin v. Markley*, 202 La. 291, 11 So.2d 593 (1942). We have little difficulty in agreeing with the District Court that Brewer's statements were defamatory per se. Having admitted that he made his comments without regard to their truth or falsity, Brewer utterly failed to carry his shifted burden.

■ With malice and falsity presumed, Manale had only to prove injury. The District Court concluded that he suffered psychological injuries as a result of the defamation. Although not capable of exact proof as to amount, such an injury suffices for purposes of Louisiana law. *See Wilson,*

*supra* at 397.[2]   *See generally* Comment, *Defamation: A Compendium*, 28 La.L.Rev. 82, 89 (1967).  Manale therefore proved tortious defamation by Brewer.

■ As a general rule, slander constitutes an individual tort that does not give rise to solidary liability.  *McKnight v. Scott*, 130 So.2d 681 (La.App. 1st Cir. 1961).  *See McGee v. Collins*, 156 La. 291, 100 So. 430 (1924).  Yet an exception to the general rule has developed:  where an employee makes a slanderous statement within the course and scope of his employment, the employer is solidarily liable.  *Wisemore, supra* 183 So. at 250–51; *Ardoyno v. Ungar*, 352 So.2d 320 (La.App. 4th Cir. 1977), *writ ref'd.*, 354 So.2d 210 (1978);  La.Civ.Code Ann. Art. 2320.[3]

■ In determining whether Brewer's conduct fell within the course and scope of his employment, we consider four factors:  whether his conduct (1) was "primarily employment rooted"; (2) was reasonably incidental to the performance of employment duties; (3) occurred on the employment premises; and (4) occurred during working hours.  *Lebrane v. Lewis*, 292 So.2d 216 (La.1974) (Tate, J.).  *See also Applewhite v. City of Baton Rouge*, 380 So.2d 119 (La. App. 1st Cir. 1979) (city liable for actions of police officer who raped detainee).

■ Brewer made his remarks at the police station during working hours.  The only question is whether his comments occurred in the course and scope of his employment so that the City could be held solidarily liable.

In *Lebrane*, a kitchen supervisor stabbed a recently-fired kitchen worker following an argument.  Although the fight began in the basement loading area, well away from the kitchen, the Louisiana Supreme Court, rejecting the notion that course and scope of employment must be strictly construed in tort, 292 So.2d at 218 n.3, held that the injury fell within the course of employment.  *Lebrane*, we believe, establishes a broad rule that surely must include these facts.  As the Supreme Court noted:

> In short, the tortious conduct of the supervisor was so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest.  It can thus be regarded as within the scope of the supervisor's employment, so that his employer is liable in tort to third persons injured thereby.

292 So.2d at 218.  We believe that officer Brewer's insulting Manale on frequent occasions, despite his superior's warning not to do so, fits within the *Lebrane* reasoning.  Indeed, it goes further:  whereas Lebrane had actually been fired at the time of the altercation, so that his supervisor could not have been acting to further the hotel's business, both Manale and Brewer were at all pertinent times New Orleans police officers.  Although the City may not have approved of Brewer's conduct, any more than the hotel would have encouraged the kitchen supervisor to stab his recently-discharged employee, the District Court, under Louisiana law, correctly found that the comments were within the scope of employment.

### Manale's Finale

■ As to the amount of damages, time-honored precedent holds that this assessment falls within the District Court's

---

2.  "Without regard to proof of injury Louisiana has recognized that injury to reputation can result simply from the character of the defamatory words, though proof of pecuniary loss is impossible."  315 So.2d at 397, *citing Jozsa v. Moroney*, 125 La. 813, 51 So. 908 (1910).

3.  **Art. 2320.  Acts of servants, students or apprentices**
     Art. 2320.  Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
     Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
     In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.

sound discretion. *Kramer v. Keys*, 643 F.2d 382 (5th Cir. 1981); *Neal v. Saga Shipping Co., S.A.*, 407 F.2d 481, 487 (5th Cir.), *cert. denied*, 395 U.S. 986, 89 S.Ct. 2143, 23 L.Ed.2d 775 (1969). Although the award was small, it was not "unconscionably inadequate", *Exum v. Dampskibbelskabet Torm, S/A*, 387 F.2d 639 (5th Cir. 1967). Absent an abuse of discretion, which most definitely did not occur here, we will not disturb the damages figure on appeal.

AFFIRMED.